First Wisconsin National Bank of Milwaukee, Appellant, v. Oby (Carroll A.), Defendant: Oby (Dorothy A.), Defendant and Respondent.

*No. 230. Argued June 1, 1971.—Decided June 25, 1971.*
(Also reported in 188 N. W. 2d 454.)

1

2

For the appellant there were briefs by *Foley & Lardner*, attorneys, and *Benn S. DiPasquale* of counsel, all of Milwaukee, and oral argument by *Mr. DiPasquale*.

For the respondent there was a brief by *Brendel, Flanagan & Sendik,* attorneys, and *Thomas R. Fahl* of counsel, all of Wauwatosa, and oral argument by *Mr. Fahl.*

CONNOR T. HANSEN, J.   On August 30, 1963, defendant, Dorothy A. Oby, and her husband executed a Check Credit Agreement with the plaintiff, First Wisconsin National Bank of Milwaukee. .The agreement provided that the plaintiff would make available to defendant and her husband a line of credit in the amount of $1,500 which they could draw upon by using special check forms provided by plaintiff.  The agreement further provided that defendant and her husband would be jointly and severally liable for all loans made by either of them pursuant to the agreement.  The pertinent language of the written Check Credit Agreement provides:

"1.   The Bank will provide a supply of check forms to be used solely in drawing upon the Check-Credit Account of the person or persons signing on the reverse side hereof (hereinafter called, whether one or more persons have so signed this Agreement, the 'Borrower'). If the Borrower shall be more than one person, each such person may draw checks on the Account, and all loans resulting therefrom and this Agreement shall be their joint and several obligations; the liability of each shall be absolute and unconditional, regardless of the liability of any other party hereto; and all references to the 'undersigned' or 'Borrower' herein shall be understood in the plural as well as in the singular and shall be deemed to apply to each person signing this Agreement both jointly and severally."

The agreement also contained a termination clause which provided:

"7. This Agreement may be terminated at any time by either party by written notice of one party to the other, addressed to such party's last known address, which delivery may be by ordinary mail. In the event of such termination, the Bank shall not be obligated to pay, but in its discretion may pay, any check on the Account issued by the Borrower prior to such termination. Any termination hereunder shall not affect the obligation of the Borrower to pay all sums borrowed and due and owing hereunder."

Pursuant to the terms of this Check Credit Agreement, between September 3, 1963, and April 23, 1966, plaintiff honored eleven checks aggregating in excess of $3,300. Each of the checks was executed and cashed by defendant's husband alone, and the disposition of the proceeds has not been traced to the direct use or benefit of defendant. The record does not contain any schedule of the payments made on the account, and therefore it cannot be determined whether the unpaid balance ever exceeded the maximum credit of $1,500.

Pursuant to the terms of the agreement, monthly statements were mailed to defendant and her husband at their residence advising them of the balance due on the account. On August 11, 1966, there was an unpaid balance on the account of $1,506.57. Thereafter defendant and her husband failed to make further payments, and pursuant to the terms of the agreement the entire amount became immediately due and owing. Subsequently certain payments were made by defendant's husband which reduced the balance to $1,252.77.

Plaintiff then commenced this action against defendant and her husband to recover the balance due on the account. A default judgment was entered against defendant's husband, and the complaint against the defend-

ant was dismissed on the grounds that she received no consideration for signing the Check Credit Agreement.

Two issues are presented by this appeal:

(1) Whether there was sufficient consideration present to enforce the defendant's promise to repay loans made to her husband by the plaintiff pursuant to the Check Credit Agreement.

(2) Whether the terms of the Check Credit Agreement violate sec. 138.05 (1), Stats., the Wisconsin usury law.

### Sufficiency of consideration.

The trial court stated the issue before it as being whether sufficient consideration had "moved" from the plaintiff to the defendant to justify enforcement of the agreement against her, and the court found that it had not, relying primarily upon the fact that plaintiff specifically retained the power to terminate the agreement at any time and to refuse to pay any outstanding checks drawn before such termination. We conclude there was sufficient consideration to support the Check Credit Agreement as it relates to the defendant.

In discussing the sufficiency of consideration, Professor Williston has stated:

"The requirement ordinarily stated for the sufficiency of consideration (sometimes referred to as the 'reality' of consideration) to support a promise is, in substance, a detriment incurred by the promisee or a benefit received by the promisor at the request of the promisor. . . .

"Both benefit and detriment have a technical meaning. Neither the benefit to the promisor nor the detriment to the promisee need be actual. 'It would be a detriment to the promisee, in a legal sense, if he, at the request of the promisor and upon the strength of that promise, had performed any act which occasioned him the slightest trouble or inconvenience, and which he was

not obliged to perform.' " 1 Williston, *Contracts* (3d ed.), pp. 375–380, secs. 102, 102A.

This definition of consideration, that it may consist of a detriment to the promisee or a benefit to the promisor, has been specifically adopted by this court and cited with approval in a long series of decisions. *Hardscrabble Ski Area v. First Nat. Bank* (1969), 42 Wis. 2d 334, 344, 166 N. W. 2d 191; *Home Savings Bank v. Gertenbach* (1955), 270 Wis. 386, 395, 71 N. W. 2d 347, 72 N. W. 2d 697; *Estate of Hatten* (1940), 233 Wis. 199, 219, 288 N. W. 278; *Onsrud v. Paulsen* (1935), 219 Wis. 1, 4, 261 N. W. 541; *Drovers' Deposit Nat. Bank v. Tichenor* (1914), 156 Wis. 251, 256, 145 N. W. 777.[1]

The parties do not dispute that this is an accurate statement of the definition of a sufficient consideration. Rather, the crux of their dispute lies in their disagreement as to when sufficient consideration must be found to have existed in the instant case in order to allow enforcement of the agreement. The plaintiff contends that it must be found when it sought enforcement of the

---

[1] A similar definition of what constitutes a consideration is found in 17 C. J. S., *Contracts*, pp. 757–761, sec. 74, which states:

"It may be laid down as a general rule, in accordance with the definition given supra sec. 70, that there is a sufficient consideration for a promise if there is any benefit to the promisor or any loss or detriment to the promisee. In this respect, any benefit, profit or advantage flowing to the promisor which he would not have received but for the contract constitutes a sufficient consideration therefor. It is not necessary, however, that a benefit should accrue to the person making the promise; it is sufficient that something valuable flows from the person to whom it is made, or that he suffers some prejudice or inconvenience, and that the promise is the inducement to the transaction.

"Indeed, there is a consideration if the promisee, in return for the promise, does anything legal which he is not bound to do, or refrains from doing anything which he has a right to do, whether or not there is any actual loss or detriment to him or actual benefit to the promisor. . . ."

agreement by initiating this action, whereas defendant contends that it must be found when the agreement was initially made.

The essential nature of this agreement at the time it was made was that the plaintiff agreed to make loans to the defendant and her husband in exchange for their agreement to repay all sums borrowed, plus interest at the rate of one percent per month, upon any unpaid balance, plus a service charge of twenty-five cents for each check drawn upon the account. Thus, at its inception, the written agreement most closely resembled an executory, bilateral contract. Defendant and her husband promised to repay any loans plus interest and a service charge in exchange for the plaintiff's promise to make the loans. Any activity to which the parties might have been bound was in the future and remained to be done. 17 C. J. S., *Contracts*, pp. 576, 577, secs. 7, 8. However, in order for mutual promises to furnish consideration for each other and thus create a binding contract, they must impose some legal liability on the persons making them. Thus, while a promise may constitute sufficient consideration for a return promise even though the promisor retains a limited discretion as to his performance, it is not sufficient if his performance depends solely upon his option or discretion, as where the promisor is free to perform or to withdraw from the agreement at will. 17 C. J. S., *Contracts*, p. 783, sec. 98. The rule is stated in 1 Restatement, *Contracts*, p. 88, sec. 79, that:

". . . A promise or apparent promise which reserves by its terms to the promisor the privilege of alternative courses of conduct is insufficient consideration if any of these courses of conduct would be insufficient consideration if it alone were bargained for."

Under the terms of this agreement, plaintiff did not unconditionally promise to make any loans that were

requested, nor did defendant and her husband unconditionally promise to borrow any money. Thus, the agreement at the time of its execution did not constitute a binding or enforceable contract since neither party could compel the other to do anything. Plaintiff could not compel the defendant to request any loans, nor could defendant compel the plaintiff to loan her or her husband any money if it decided not to. Before any obligation could arise pursuant to the agreement, two conditions had to be met: (1) Defendant or her husband had to write a check drawing on their credit; and (2) plaintiff had to honor the check or loan by paying out funds on the check. Once these conditions were met, however, the agreement did contain an unconditional promise that the outstanding balance on the account would be repaid, and that the defendant and her husband were jointly and severally liable for the repayment thereof.

The test of mutuality of obligation, and therefore sufficiency of consideration, is not to be applied at the time the respective promises are made, but rather as of the time when one or the other is sought to be enforced. 17 Am. Jur. 2d, *Contracts,* p. 346, sec. 11.

In *Oconto Brewing Co. v. Cayouette* (1909), 138 Wis. 664, 666, 120 N. W. 497, the plaintiff brewing company, in order to induce the defendant tavernkeeper to sell its beer, entered an agreement that it would build a beer depot in the city to supply its beer, and that until the depot was built it would furnish its beer to the defendant tavernkeeper free of charge. Defendant began serving plaintiff's beer, but the beer depot was never built, and the plaintiff brought an action to recover for the beer which it had supplied to defendant. In response to the trial court's conclusion that the alleged contract was void, either for want of mutuality or want of consideration, or both, this court stated:

"We cannot agree with this conclusion. We see no reason why a valid contract might not have been made based upon the alleged agreement for the furnishing of beer by the plaintiff to the defendant gratis, as specified in the contract; and whether this contract could be enforced while executory for want of mutuality we need not consider, because it appears that when the action was brought the contract had been fully performed and was then an executed contract, and under the repeated decisions of this and other courts, even though a contract is not enforceable while executory by reason of want of mutuality, it becomes valid when executed. . . ." *See also: Nelsen v. Farmers Mut. Automobile Ins. Co.* (1958), 4 Wis. 2d 36, 51, 90 N. W. 2d 123; *Estate of Beyschlag* (1930), 201 Wis. 613, 617, 231 N. W. 165; *Rust v. Fitzhugh* (1907), 132 Wis. 549, 557, 112 N. W. 508.[2]

With regard to retention of the power to cancel or terminate an agreement in particular, 17 C. J. S., *Contracts,* pp. 806–809, sec. 100 (6) states:

"Where there is no sufficient consideration to support the contract other than the mutual promises of the parties, ordinarily a contract which one party has an absolute and unrestricted right to cancel or terminate at any time, or as to which both parties have such right, is invalid and unenforceable for lack of mutuality, *at least to the extent that it remains executory.* . . ." (Emphasis supplied.)

In the instant case, defendant promised to repay any loans which the plaintiff would make to her or her husband. Though at its inception the agreement lacked mutuality of obligations since plaintiff was not bound to make any loans whatsoever, the real question is whether at the time this action was brought the plaintiff had fully or partially executed the act which formed the basis for defendant's promise. Clearly it had. In reliance of the promise of defendant and her husband, plaintiff

---

[2] *See also:* 17 C. J. S., *Contracts,* pp. 799–803, sec. 100 (3)a.

paid out over $3,300 of its funds on checks drawn by the husband. The "movement" of consideration directly to her or accruing to her benefit is not necessary. It is sufficient that something of value flows from the promisee, or that it performed any act or suffered any inconvenience which it was not obligated to, and that it relied upon the strength of the promise as the inducement for such act. Therefore, to the extent that plaintiff's promise no longer remained executory and illusory, but was executed, sufficient consideration in the form of payments exceeding $3,300 was given in reliance upon the promises of defendant and her husband to support her promise, and to allow enforcement of the contract against defendant.

The parties are in dispute as to what constitutes the primary contract here. Plaintiff contends that it was the Check Credit Agreement while defendant contends that each check itself was a primary agreement.

The essence of the contract here was an agreement to make loans and to repay those loans. This was embodied in the terms of the Check Credit Agreement. The writing of individual checks was only the means by which that agreement was to be performed. Though the contract was unenforceable at its inception for a lack of consideration, the consideration ultimately supplied by the honoring of individual checks did not create a new contract each time one was written and honored, but rather related back to the Check Credit Agreement itself, clothing that contract with consideration and making it valid and enforceable at least to the extent that it was no longer executory on the part of the plaintiff.

Defendant contends that even if sufficient consideration to support her promise is found to exist, she was merely a guarantor of her husband's debts, and her guaranty is unenforceable since she was entitled to a notice of acceptance from the plaintiff which was never given.

The language of the Check Credit Agreement constitutes a primary and unconditional promise to perform or to repay any loans made to either her or her husband.[3] The language of the agreement cannot be said to be a promise of the defendant to guaranty the debts of her husband.

The distinguishing characteristics of a guaranty are set forth at 38 Am. Jur. 2d, *Guaranty*, pp. 997, 998, secs. 2, 3, where it is stated:

"The contract of guaranty is an enforceable undertaking or promise on the part of one person which is collateral to a primary or principal obligation on the part of another, and which binds the obligor to performance in the event of nonperformance by such other, the latter being bound to perform primarily. 'Guaranty' is defined as 'a promise to answer for the debt, default, or miscarriage of another person.' In other words, the guarantor is responsible as security for the debt or obligation of another person. . . .

"The distinguishing feature of a guaranty is that the obligation is collateral to another contractual duty to perform. Thus, if the obligation sought to be enforced is a primary or unconditional promise so that the promisor is primarily liable regardless of the failure of some other party to perform his contractual duty, the conclusion is that the obligation is not a contract of guaranty. . . ."

*Usury.*

Defendant argues that the Check Credit Agreement is usurious upon its face and, therefore, unenforceable. The agreement provides that the interest to be charged will be at "the rate of one per cent (1%) per month (12% per annum) upon the unpaid balance outstanding hereunder," and further states that:

". . . It is understood that interest and other charges due hereunder will be computed and charged to the un-

---

[3] Check Credit Agreement, paragraph No. 1, *supra.*

dersigned's Account monthly as of the date of each monthly Account statement (described on the reverse side hereof) and will become part of the balance owed by the undersigned upon which interest and other charges specified herein shall be computed and accrue from and after such monthly statement date."

It is not necessary to consider the fact that plaintiff is a national bank to resolve this issue.

On its face, the Check Credit Agreement does not violate sec. 138.05 (1) (a), Stats.,[4] since the rate of interest expressed is one percent per month, or twelve percent per annum. However, the agreement does provide that interest will be compounded, and respondent takes the position that this raises the annual interest rate to 12.68 percent, in violation of the statutes. However, sec. 138.05 (1) (c), provides:

". . . In the computation of interest upon any bond, note, or other instrument or agreement, interest shall not be compounded, nor shall the interest thereon be construed to bear interest, *unless an agreement to that effect is clearly expressed in writing, and signed by the party to be charged therewith.* (Emphasis supplied.)

The document in question here was signed by defendant and expressly provides in its terms that the interest charged will become part of the balance due on the account, upon which interest will again be computed after the date of the monthly statement.

Therefore, the judgment of the trial court is reversed and the cause remanded, with directions to enter judg-

[4] Sec. 138.05 (1), Stats., provides in part: "Except as authorized by other statutes, no person shall, directly or indirectly, contract for, take or receive in money, goods or things in action, or in any other way, any greater sum or any greater value, for the loan or forbearance of money, goods or things in action, than:

"(a) At the rate of $12 upon $100 for one year computed upon the declining principal balance of the loan or forbearance;"

ment on the complaint for the amount still due and owing on the account.

*By the Court.*—Judgment reversed and cause remanded, with directions to enter judgment for the plaintiff.