The majority concludes that Cindy McNaughton, an at-will employee of United Healthcare Services, Inc. ("United"), must arbitrate her claims of fraud and interference with business relations against United, based on arbitration provisions contained in the "Arbitration Policy" section of United's "United Healthcare Corporation Employee Handbook" (the "Handbook"), and more fully set forth in the "United Healthcare Corporation Employment Arbitration Policy" ("the UHCEAP"). In other words, it holds that the arbitration provisions constitute a binding contract between United and McNaughton. Because I consider the arbitration provisions unenforceable under ordinary rules of contract law, I respectfully dissent.
Perhaps it bears repeating here "that the enforceability of arbitration agreements is governed by the rules applicable to contracts generally." Sablosky v. Edward S. Gordon Co., 73 N.Y.2d 133,136, 535 N.E.2d 643, 645, 538 N.Y.S.2d 513, (1989); see alsoDoctor's Associates, Inc. v. Casarotto, 517 U.S. 681, 687,116 S. Ct. 1652, 134 L.Ed.2d 902 (1996) ("generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements"). Thus, the Federal Arbitration Act, 9 U.S.C. § 1 et seq., is designed to place arbitration agreements "`upon the same footing as other contracts,'" Casarotto, 517 U.S. at 687, 116 S.Ct. 1652 (quotingScherk v. Alberto-Culver Co., 417 U.S. 506, 511, 94 S.Ct. 2449, 41, L.E.2d 270 (1974)) (emphasis added), not to elevate themabove other contracts. That, in essence, is what the majority has done in this case.
"The at-will employment relationship, despite its limitations, is nonetheless contractual. Employment contracts, particularly those which would be considered at-will, are the best and most; typical examples of unilateral contracts." Wagner v. City ofGlobe, 150 Ariz. 82, 85, 722 P.2d 250, 253 (1986) (emphasis added). In a unilateral contract, "the offer or promise of one party does not become binding or enforceable until there is performance by the other party." Scholtes v. Signal DeliveryServ., Inc., 548 F. Supp. 487, 491 (W.D.Ark. 1982). "Ordinarily, in a unilateral contract, there is no bargaining process or exchange of promises. . . . Only one party makes an offer (or promise) which invites performance by another, and the performance constitutes both the acceptance of that offer and consideration." Orr v. Westminster Village North, Inc.,689 N.E.2d 712, 719 n. 11 (Ind. 1997) (emphasis added). In such cases, the employer induces the employee to render services to receive payment for performance, which is, itself, consideration for the promise. The employer's promise ripens into an enforceable contract upon performance by the employee.
In certain cases, as we recognized in Hoffman-La Roche, Inc. v.Campbell, 512 So.2d 725 (Ala. 1987), terms in an employee handbook can modify the employer's promise in some sense, such as qualifying the employer's unfettered right to terminate employment. But elements added by a handbook do not change the fundamental, unilateral character of the at-will contractual relationship. See Note, Employee Handbooks and Employment-At-WillContracts, 1985 Duke L.J. 196, 212-14. Still, the parties bargain not for promises, but for performance. See id.
But there is another class of contracts, where the parties contemplate or bargain not for performance, but for promises.
Such a contract is bilateral and executory — the promises constituting the necessary consideration. "`In a bilateral contract, the promise of each promisor must be bargained for and given in exchange for the other's promise.'" NBZ, Inc. v.Pilarski, 185 Wis.2d 827, 838 n. 5, 520 N.W.2d 93, 97 n. 5 (Ct.App. 1994).
In this class of contracts, if the promise on one side is onlyillusory, there is no "mutuality of obligation" and the contract is unenforceable. "Because the promises of both parties to a bilateral contract must be supported by consideration, the contract is unenforceable if the promise of either party is illusory (Calamari Perillo, Contracts § 70, *Page 604 
at 134)." Curtis Properties Corp. v. Greif Companies, 212 A.D.2d 259,265, 628 N.Y.S.2d 628, 632 (1995). "When illusory promises are all that support a purported bilateral contract, there is no contract." Light v. Centel Cellular Co. of Texas, 883 S.W.2d 642,645 (Tex. 1994) A promise is illusory when the promisor "promises to do a thing only if it pleases him to do it." Winslow v. Mell,48 Wn.2d 581, 584, 295 P.2d 319, 321 (1956). Otherwise stated:
 "[W]hile a promise may constitute sufficient consideration for a return promise even though the promisor retains a limited discretion as to his performance, it is not sufficient if his performance depends solely upon his option or discretion, as where the promisor is free to perform or to withdraw from the agreement at will."
First Wisconsin Nat'l Bank of Milwaukee v. Oby, 52 Wis.2d 1, 7,188 N.W.2d 454, 457 (1971) (emphasis added).
The majority misunderstands the facts in this case and misapplies the law. More specifically, it fails to realize that this case involves two, district contracts. One contract is the standard unilateral at-will employment contract. That fact is evidenced by a provision in the "Code of Conduct and Employee Handbook Acknowledgment" ("Code") signed by McNaughton. The Code states:
"At-Will Employment
 "I understand that the provisions in this Handbook are guidelines and, except for the provisions of the Employment Arbitration Policy, do not establish a contract or any particular terms or condition of employment between myself and UHC.
(Emphasis added.) Indeed, it is undisputed that the employment relationship was an at-will relationship.
But "at-will employment does not preclude the formation of other contracts between employer and employee." Light, 883 S.W.2d at 644 (emphasis in original). If the consideration for such contracts is not the performance of services, but, instead, mutual promises, then the contracts are bilateral and — provided the promises are not illusory — are enforceable independently of unilateral, at-will contracts existing between the parties. The majority fails to recognize (1) that the UHCEAP is an executory, bilateral contract and (2) that the promises of United are illusory. More specifically, it errs in characterizing the UHCEAP as a unilateral relationship thus confusing it with the at-will contract that existed independently of the UHCEAP.
In fact, in addition to the promises of McNaughton, the UHCEAP — which emcompasses 7 1/2 pages of text — contains a number ofpromises by United. For Example, United promises: (1) to "pay 100 percent in excess of the first twenty-five dollars . . . of the required AAA administrative fee," UHCEAP, Rule C., § 1, ¶ 1; (2) to pay the expenses of its own witnesses, id. at § 25; (3) to pay its "own legal fees and expenses," id.; and (4) to pay "[a]ll other expenses . . . of the arbitration, such as required travel and other expenses of the arbitrator." Id. Clearly, the UHCEAP contains promises running from both parties.
Moreover, the UHCEAP purports to be applicable to United's employment relationships whether its employees ever actually perform services for United. Specifically, it states in pertinent part:
"B. SCOPE OF POLICY
 "Arbitration is the final, exclusive and required forum for the resolution of all employment related
disputes which are based on a legal claim. . . .
 "A dispute is based on a legal claim and is subject to this Policy if it arises or involves a claim under any federal, state or local statute, regulation or common law doctrine regarding or relating to . . . terms and conditions of employment. . . ."
(Emphasis added.)
The scope of the arbitration provisions is so broad that it is entirely conceivable a dispute could arise, triggering the UHCEAP, before an employee actually begins work. In the absence of such performance, the consideration necessary to render a unilateral, at-will contract enforceable would be lacking. The UHCEAP, however, being a bilateral contract, does not stand or fall on performance, but on the mutual promises of the parties. Thus except for the fact that the promises of United areillusory, the *Page 605 
UHCEAP purports to have been enforceable had McNaughton not worked a single day.
The fatal flaw of the UHCEAP, rendering it illusory, is contained in the following provision: "United Healthcare reserves the right to alter, amend, modify, or revoke this policy at itssole and obsolete discretion at any time with or without notice."
(Emphasis added.) As I have already discussed in this opinion, a promise is illusory, rendering the "contract" unenforceable, "if [the promisor's] performance depends solely upon his option or discretion, as where the promisor is free to perform or to withdraw from the agreement at will." First Wisconsin Nat'l Bankof Milwaukee v. Oby, 52 Wis.2d 1, 7, 188 N.W.2d 454, 457 (1971) (emphasis added). The "promises" of United in the UHCEAP provide the classic example of this rule, because it can perform, or not perform at its "sole and absolute discretion."
The majority attempts to evade the application of this rule through its discussion of covenants not to compete, as though the two rules were analogous. They are not. The rule of concompetition agreements, as it has evolved in this state, bases its validity on performance. See Condelles v. Alabama Telecaster,Inc., 530 So.2d 201, 204 (Ala. 1988) ("our case law holds that continued employment is sufficient consideration for signing a noncompetition agreement"). Under this rationale, the noncompetition agreement is still regarded as a class of unilateral contract. See Note, Consideration for EmployeeNoncompetition Covenants in Employments at Will, 54 Fordham L.Rev. 1123, 1138-39 (1986).although such agreements do, like bilateral contracts, involve two promises — that of the employers to pay for performance and that of the employee not to compete — actually, the basis of the bargain is not a promise for a promise as in a bilateral contract. Instead, the employee bargains nor for a promise, but for employment, that is, payment for services rendered. "The covenant becomes enforceable against the employee only after the employer has accepted the employee's offer by beginning or completing the requested performance." Id. at 1139. "The requested performance may include continuing the employment, paying the employee a flat stated sum or giving the employee some other immediate benefit." Id.
Thus, noncompetition agreements are distinguished from the bilateral contract in this case by the fact that the at-will contract itself is the essence of the former, but not of the latter. In this case, the consideration on which enforceable depends is the mutual promises, which, on United's side, are illusory. Based on ordinary principles of contract law, therefore, the arbitration agreement in this case is unenforceable.
The majority cites Kelly v. UHC Managment Co., 967 F. Supp. 1240
(N.D.Ala. 1997), as support for its position on this point. To be sure, that case is factually indistinguishable from this case, Unfortunately, the court in Kelly made the same error the majority makes in this case, namely the failutre to discern that this scenario involves an executory, bilateral contract requiringmutual promises of substance as consideration. For these reason, I respectfully dissent.
SHORES, J., concurs.