**ELKHART LAKE'S ROAD AMERICA, INC., Plaintiff–Appellee,**

v.

**CHICAGO HISTORIC RACES, LTD., and Joseph Marchetti, Defendants–Appellants.**

No. 97–2618.

United States Court of Appeals, Seventh Circuit.

Argued March 30, 1998.

Decided Oct. 20, 1998.

ous, and because we find that the contract allowed Road America to terminate the agreement at will with notice, we affirm.

## I.

In 1981, Joseph Marchetti developed the idea of holding a vintage car race at Road America's track in Elkhart Lake, Wisconsin. Marchetti incorporated Chicago Historic Races ("CHR") for the purpose of producing the race, and entered into a number of agreements with Road America for the use of its track facility. For sixteen years, CHR organized and promoted the annual July race, which grew from approximately 50 drivers in 1981 to approximately 570 drivers in 1996. In addition to the races, the event featured classic car exhibitions and a festival of outdoor dinner parties and dancing. As the race grew, so did spectator attendance, and in 1996, the event received national television coverage.

In the early years of the race, between 1981 and 1987, CHR entered into agreements with Road America to rent the track for a set amount per day. CHR was also responsible for all of the expenses of the race beyond the track rental, and in turn was entitled to all of the profits. In late 1987, Road America sought to change the nature of its relationship with CHR. The reasons and motivations for Road America's decision are irrelevant to the merits of this appeal, although the parties contest these facts mightily. In any case, in 1988, the parties entered into the first of several multi-year agreements, dividing the responsibilities and the profits between the two companies. In October 1995, the parties entered into the fourth such agreement, which was to govern the relationship for the 1996, 1997 and 1998 races. After the 1996 race, and before November 1, 1996, Road America sent a letter to CHR purporting to cancel the agreement for the next two years. CHR responded with a letter from its lawyers, threatening legal action and demanding an accounting for the years 1991 through 1996. Road America then filed a declaratory action in federal court to clarify its rights under the contract. The district court granted summary judgment in favor of Road America, holding that the contract gave

Franklyn M. Gimbel (argued), Kathryn A. Keppel, Gimbel, Reilly, Guerin & Brown, Milwaukee, WI, for Plaintiff–Appellee.

Robert J. Rubin (argued), John C. Stiefel, Nadia A. Nagib, Altheimer & Gray, Chicago, IL, John E. Flanagan, Michael, Best & Friedrich, Milwaukee, WI, for Defendants–Appellants.

Before MANION, ROVNER and EVANS, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

Chicago Historic Races produced a vintage automobile race at Road America's track in Elkhart Lake, Wisconsin, annually for sixteen years. The parties are now embroiled in a dispute over the meaning of a contract provision that Chicago Historic Races labels ambiguous. Road America claims the provision gave it the right to terminate the contract at will with notice. Chicago Historic Races counters that the provision allowed cancellation of the race and not the contract, and that Road America was obliged to use Chicago Historic Races as the sanctioning authority if the race was held. Because we find the language of the contract unambigu-

each party the right to cancel the agreement by giving notice to the other party by November 1 of the preceding year. CHR appealed.

## II.

■ The parties agree that Wisconsin law governs the contract at issue. The only dispute is whether the contract grants Road America the right to cancel the agreement at will so long as it gives notice by November 1 of the prior year. We begin by examining the provisions at issue:

The duration of this agreement shall be for a period of three (3) years from 1996 thru [sic] 1998. However, either party may cancel any year by written notice prior to November 1st of the preceding year.

*See* Appellant's Appendix, Exhibit 1, Agreement, paragraph 1. The primary source of the dispute between CHR and Road America is the meaning of the phrase "cancel any year." CHR contends that "cancel any year" must be construed in the context of other provisions in the contract relating to termination. For example, paragraph 2 provides that certain payments are due from CHR thirty days from the date of the invoice, and that "[a]ny delinquency in payment amounts or due date will void this agreement." Under paragraph 20, violations of provisions relating to sponsorship agreements and media rights would "void this agreement." Finally, paragraph 22 provides that delinquency in payment of certain deposits would also void the agreement. According to CHR, paragraphs 2, 20 and 22 provide the only reasons for termination, and the agreement is not otherwise terminable. Under CHR's reading of the contract, paragraph 1 gives the parties a right to cancel the *race*, not the *contract*, for a particular year. CHR insists that if the race is to be held in a particular year, Road America is bound under the contract to use CHR as the sanctioning authority.

Road America and CHR agree that the phrase "cancel any year" cannot be read literally. Thanks to the laws of physics, neither company has the ability to cancel time itself. Road America contends that when read in conjunction with the sentence preceding it, the phrase "cancel any year" can only mean "cancel any year of the agreement." Road America points out that the use of the adverb "however" at the beginning of the second sentence ties it inextricably to the first sentence. Citing the rules of grammar, Road America argues there is only one logical meaning to paragraph 1, and that is that either party has the right to cancel the agreement at will by giving notice to the other party by November 1 of the preceding year. CHR responds that such a reading would make the agreement illusory, for if either party could terminate the agreement at any time, then the agreement was not worth the paper on which it was printed. Moreover, CHR contends, Road America used the phrase "void the agreement" in numerous other parts of the contract, and thus knew what language to use when it meant "terminate the agreement." Finally, CHR posits that Road America's reading of paragraph 1 would render the three-year term provision and the voiding provisions in paragraphs 2, 20 and 22 superfluous because there would be no need to set a term or list particular reasons for voiding the agreement if the agreement were terminable at will.

■ Because the construction of a contract is a question of law, our review is *de novo*. *Weimer v. Country Mutual Ins. Co.*, 216 Wis.2d 705, 575 N.W.2d 466, 472 (1998). We must construe contracts as they are written. "[T]he contract language governs if it is unambiguous, even in the face of a different interpretation the parties themselves may have placed on the agreement." *Amcast Industrial Corp. v. Affiliated FM Ins. Co.*, 584 N.W.2d 218, 225–26 (Wis.App.1998). We attempt to ascertain the intent of the parties when we interpret a contract. *Gorton v. Hostak, Henzl & Bichler, S.C.*, 217 Wis.2d 493, 577 N.W.2d 617, 622–23 (1998) (citing *State ex rel. Journal/Sentinel, Inc. v. Pleva*, 155 Wis.2d 704, 456 N.W.2d 359 (1990)). "Where the terms of a contract are clear and unambiguous, we construe the contract according to its literal terms." *Gorton*, 577 N.W.2d at 622–23. However, when the contractual terms are reasonably susceptible to more than one construction, the contract is ambiguous. *Id.; Kohler Co. v. Wixen*, 204 Wis.2d 327, 555 N.W.2d 640, 644 (1996). We

must therefore begin by determining whether the phrase "cancel any year" is ambiguous, a question of law which we review independently. *Kohler,* 555 N.W.2d at 644.

In the context of paragraph 1 and in the context of the contract as a whole, the phrase "cancel any year" is not readily susceptible to more than one meaning. Through the use of the adverb "however," the phrase refers back to the preceding sentence, which sets the term of "this agreement" as three years. Thus, the antecedent to "any year" is "this agreement." CHR's interpretation, "any year of the race," has no support in the plain language of the paragraph, and indeed has no support anywhere in the contract. We are hard pressed to think of any other meaning the phrase could have in the context of this contract.[1] CHR's argument that a contract term requiring interpretation is necessarily ambiguous is misplaced. A word is ambiguous only if it is readily susceptible to more than one meaning, and in the context of this contract, the phrase "cancel any year" is not ambiguous. *See Gorton,* 577 N.W.2d at 622–23.

Nor are we persuaded that our reading of the contract renders any other provision meaningless or superfluous. Provisions in paragraphs 2, 20 and 22 void the agreement on the happening of certain events, without any requirement to give notice before November 1 of the preceding year. That the contract can also be canceled by either party with notice and without cause has no effect on those provisions at all. The distinct provisions address different circumstances and are not mutually exclusive. CHR's reliance on *Echo, Inc. v. Whitson Co., Inc.,* 121 F.3d 1099 (7th Cir.1997) for the proposition that only the race may be canceled under paragraph 1 is not persuasive. Unlike the contract in *Echo,* the agreement here contains no support for an alternate reading of the phrase "cancel any year," and thus is not ambiguous. *Echo* is thus inapposite.

We also reject CHR's claim that allowing either party to cancel the contract

without cause renders the agreement illusory. Under Wisconsin law, we apply the test of mutuality of obligation not at the time the respective promises are made, but rather at the time when one or the other is sought to be enforced. *First Wisconsin Nat'l Bank of Milwaukee v. Oby,* 52 Wis.2d 1, 188 N.W.2d 454, 458 (1971). At the time that Road America sought to invoke the cancellation provision and CHR sought to enforce the contract, the 1996 race had already been held. Both parties had substantially performed their obligations under the contract. Because the contract had been performed in part by both parties, the contract is not illusory, and is not rendered illusory by our interpretation of the cancellation provision. *Oby,* 188 N.W.2d at 458–59.

All that remains is to apply the terms of the contract as they were written. *Meyer v. Classified Ins. Co., Inc.,* 192 Wis.2d 463, 531 N.W.2d 416, 418 (1995). The contract allows either party to cancel any year of the agreement by giving notice prior to November 1 of the preceding year. CHR does not dispute that Road America gave timely notice of the cancellation. Nor does CHR claim that the notice was somehow inadequate. CHR claims only that if Road America held a vintage auto race on the traditional July weekend for the CHR event, Road America was obliged to use CHR as the sanctioning authority. CHR conceded at oral argument that nothing in the contract renders the agreement exclusive, and we could find no support in the three-page contract for this proposition. Road America was therefore within its rights under the contract to cancel the agreement and engage another sanctioning authority to hold the vintage auto race. Therefore, the district court properly granted summary judgment in favor of Road America.

AFFIRMED.

---

1. The Wisconsin Court of Appeals had the occasion to interpret the word "any" in a dispute over the meaning of a rental agreement. *State of Wisconsin v. Flood,* 195 Wis.2d 515, 536 N.W.2d 458, 466 (1995). In that case, the court consulted a dictionary for the plain meaning of "any" and determined it meant "to any extent" or "any quantity." That conclusion is consistent with the district court's reading here that Road America could cancel the remainder of the agreement by giving the appropriate notice.