Michelle L. MICHALSKI,
Plaintiff–Appellee,

v.

CIRCUIT CITY STORES, INC.,
Defendant–Appellant.

No. 98–3023.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 7, 1999.

Decided May 5, 1999.

Rehearing and Suggestion for Rehearing
En Banc Denied June 4, 1999.

Thomas P. Lyons (argued), Cunningham & Lyons, Milwaukee, WI, for Plaintiff–Appellee.

Patricia C. Slovak, Schiff, Hardin & Waite, Chicago, IL, David E. Nagle (argued), Richmond, VA, for Defendant–Appellant.

Before FLAUM, EASTERBROOK and ROVNER, Circuit Judges.

FLAUM, Circuit Judge.

Circuit City Stores, Inc. ("Circuit City") appeals from the district court's denial of its motion to dismiss and to compel arbitration of Michelle Michalski's discrimination claim under Title VII of the Civil Right Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000 *et seq.* We now reverse and remand, holding that the arbitration agreement entered into by the parties supersedes Michalski's right to

pursue her discrimination claim in federal court.

## I. BACKGROUND

Michelle Michalski was employed by Circuit City from 1993 to 1997. In 1995, Circuit City instituted its Associate Issue Resolution Program ("AIRP") which asked all employees to agree to have any employment related disputes, including Title VII discrimination suits, decided in binding arbitration instead of litigation. The AIRP automatically applied to all employees unless they sent a special opt-out form to Circuit City headquarters within thirty days of signing an acknowledgment form indicating receipt of the AIRP material. Michalski did not opt out of the program.

On May 21, 1997, Michalski was fired. Claiming her termination was based on the fact that she was pregnant, Michalski filed suit under Title VII in federal court on May 12, 1998. To preserve her rights, she simultaneously filed a request to arbitrate on the same day. In response, Circuit City moved the district court to either stay the proceeding or dismiss Michalski's complaint and compel arbitration pursuant to the AIRP and the Federal Arbitration Act. The district court denied Circuit City's motion, holding that Michalski was not bound by the AIRP because the agreement to arbitrate failed "for want of compliance with basic contract law." Specifically, the district court reasoned that because Circuit City gave up nothing, and promised to do nothing for Michalski in exchange for her agreeing to be bound by the AIRP, there was no consideration sufficient to support a valid contract. Circuit City now appeals.

## II. ANALYSIS

As an initial matter, we find jurisdiction for this appeal under section 16(a)(1)(C) of the Federal Arbitration Act ("FAA"), which provides that appeal may be taken from an order denying a motion to compel arbitration. 9 U.S.C. § 16(a)(1)(C); *see*

*also Koveleskie v. SBC Capital Markets, Inc.*, 167 F.3d 361, 363 (7th Cir.1999).

This case presents two questions: first, whether employees can agree in advance to arbitrate Title VII claims and second, whether consideration was given by Circuit City in exchange for Michalski's promise to arbitrate.

### A. Arbitration of Title VII claims.

■ Michalski first asserts that the strong federal policy behind Title VII precludes mandatory arbitration of civil rights claims. However, this argument was explicitly rejected in this circuit by our decision in *Koveleskie v. SBC Capital Markets, Inc.*, 167 F.3d 361, 365 (7th Cir.1999), in which we held that Congress did not intend Title VII to preclude enforcement of pre-dispute arbitration agreements such as the one used by Circuit City.

In *Koveleskie*, the plaintiff, a securities industry analyst, was required as a condition of her employment to sign an agreement to arbitrate all future employment disputes, including Title VII discrimination claims. She challenged the enforceability of the pre-dispute arbitration agreement, as it applied to employment discrimination claims. We found, as have most other circuits, that Congress did not intend to prohibit the use of pre-dispute arbitration agreements for resolution of Title VII claims. *Id.*; *see also Seus v. John Nuveen & Co.*, 146 F.3d 175, 182 (3rd Cir.1998); *Patterson v. Tenet Healthcare, Inc.*, 113 F.3d 832 (8th Cir.1997) (holding that Title VII claims are subject to pre-dispute arbitration agreements under the FAA); *Cole v. Burns International Security Services*, 105 F.3d 1465 (D.C.Cir.1997) (affirming an order compelling arbitration of Title VII claims where an employee signed a mandatory arbitration agreement as a condition of his employment); *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482 (10th Cir.1994) (holding that Title VII claims are subject to mandatory arbitration); *Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698 (11th Cir.1992)

(holding that Title VII claims are subject to securities industry compulsory arbitration); *Willis v. Dean Witter Reynolds, Inc.*, 948 F.2d 305 (6th Cir.1991); Alford v. Dean Witter Reynolds, Inc., 939 F.2d 229 (5th Cir.1991) (holding that Title VII claims can be subject to compulsory arbitration). Thus, this claim is foreclosed by our recent decision in *Koveleskie.*

What makes Michalski's case even less compelling is that, unlike the plaintiff in *Koveleskie* who was required to sign the arbitration agreement as a condition of her employment, Michalski had an opt-out provision. She was free not to arbitrate; she was given a choice and she chose—by not signing the opt-out provision—to be bound by the AIRP. It does not follow that this court would invalidate an arbitration agreement such as this one, when we have previously held that a nonoptional, mandatory arbitration agreement is valid. Thus, Michalski's argument that Title VII precludes arbitrations agreements such as the AIRP fails in the face of binding precedent to the contrary.

## B. Consideration.

■ The district court found inadequate consideration to support Michalski's agreement to arbitrate because Circuit City had not promised to give anything up.

■ An agreement to arbitrate is treated like any other contract: "In determining whether a valid agreement arose between the parties, a federal court should look to the state law that ordinarily governs the formation of contracts." *Koveleskie v. SBC Capital Markets, Inc.*, 167 F.3d 361, 367–8 (7th Cir.1999) (citing *Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1130 (7th Cir.1997)). In the present case, we look to the contract law of Wisconsin, the state where the employment and termination took place. *Id.* at 368; *Gibson*, 121 F.3d at 1130 (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)). In order for a contract to be enforceable under Wisconsin law, there must be consideration, *NBZ, Inc. v. Pilarski*, 185 Wis.2d 827, 520 N.W.2d 93, 96 (Wis.Ct.App.1994), which may be either a detriment to the promisor or a benefit to the promisee. *Lovett v. Mt. Senario College, Inc.*, 154 Wis.2d 831, 454 N.W.2d 356, 358 (Wis.Ct.App.1990).

In reaching its decision, the district court relied on our decision in *Gibson*, 121 F.3d 1126, in which we held that a lack of consideration rendered an employee's promise to submit claims to arbitration unenforceable. 121 F.3d 1126. In *Gibson*, the plaintiff signed a contract provided by her employer which stated, "I agree to the grievance and arbitration provisions set forth in the Associates Policy Manual" (the "Manual"). *Id.* at 1128. The Manual, which was not given to Gibson at the time she signed the contract, specifically stated that all disputes, including Title VII claims, were subject to arbitration, but also stated that "it does not constitute a contract or promise of any kind" on the part of the employer. *Id.* at 1128. Thus, the employer was not bound by the Manual's terms. This court found that because Gibson was not given a copy of the Manual at the time she signed the contract, and because she never signed the Manual, there was no consideration in the form of a promise by the employer in exchange for Gibson's agreement to arbitrate. Additionally, this court found that Gibson's promise to arbitrate was not supported by consideration in the form of her employer's promise to hire her or to continue to employ her. *Id.* at 1131.

The present case is distinguishable from our decision in *Gibson* because, as the appellant points out, Circuit City's promise to be bound by the arbitration process itself serves as mutual consideration here. Although the particular sheet that the employee signed did not state that the employer would be bound by arbitration, other information in the AIRP packet given contemporaneously to Michalski clearly indicated such a promise by Circuit City.

Similarly, in *Koveleskie*, the plaintiff challenged the enforcement of a pre-dispute arbitration agreement on the grounds that there was inadequate consideration to support the employee's promise to arbitrate. 167 F.3d at 366. We held that the plaintiff's contract with her employer was supported by adequate consideration for two reasons. First, we found sufficient consideration from the fact that the plaintiff promised to arbitrate all future disputes in exchange for the company's promise to employ her. *Id.* at 368. Second, we noted that both parties were bound by the terms of the agreement. *Id.*

In a relatively recent case similar to the present one, the Fourth Circuit held that under the AIRP, Circuit City's promise to be bound by the process and results of arbitration of employee disputes was sufficient consideration. *Johnson v. Circuit City*, 148 F.3d 373, 378 (4th Cir.1998). That court rejected the notion that Circuit City must also agree to submit its claims against the employee to arbitration. *Id.* at 379. While in *Johnson*, Circuit City stated that it agreed to be bound by arbitration in the same document which contained the signature of the employee, *id.* at 375, here the employer's commitment to arbitrate is found in the material given to Michalski along with the AIRP. The implication that both parties agreed to binding arbitration is evident from a reading of the accompanying Associate Issue Resolution Handbook. The section of the Handbook entitled "BINDING ARBITRATION OF LEGAL DISPUTES," under the subsection "What is arbitration?," states "In arbitration, you and the company agree to submit a legal dispute to an arbitrator who ... renders a final, binding decision to your legal claim." We conclude that this description of arbitration, in the context of this case, clearly indicates a mutual promise to arbitrate, binding both parties, and constitutes sufficient consideration.

## III. CONCLUSION

We hold that the district court erred in denying the defendant's motion to compel arbitration of Michalski's discrimination claims. For all the reasons stated herein, the order of the district court is REVERSED and this case is REMANDED for further proceedings consistent with this opinion.

ROVNER, Circuit Judge, dissenting.

Paying homage to "a basic tenet of contract law," we recognized in *Gibson* that an employer must have given some consideration in exchange for an employee's pledge to arbitrate if the agreement is to be enforced against her. *Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1130 (7th Cir.1997) (applying Indiana law); *see also Larimer v. Dayton Hudson Corp.*, 137 F.3d 497, 502 (7th Cir.1998) (applying Wisconsin law); *Levin v. Perkins*, 12 Wis.2d 398, 107 N.W.2d 492, 495 (1961); *Gustafson v. Physicians Ins. Co. of Wis.*, 223 Wis.2d 164, 588 N.W.2d 363, 367 (Wis. App.1998). Thus, Circuit City can hold Michalski to her promise only to the extent that the company suffered a detriment or conferred some benefit upon Michalski in exchange for her agreement to forgo judicial resolution of her claims. *Gibson*, 121 F.3d at 1130; *see also First Wis. Nat'l Bank of Milwaukee v. Oby*, 52 Wis.2d 1, 188 N.W.2d 454, 457 (1971) (collecting cases); *Lovett v. Mt. Senario College, Inc.*, 154 Wis.2d 831, 454 N.W.2d 356, 358 (Wis. App.Ct.1990). In fact, Circuit City surrendered nothing at all. My colleagues read into the arbitration agreement a promise by Circuit City to be bound by the results of any arbitration proceeding and cite that as sufficient consideration. *Ante* at 637; *see Gibson*, 121 F.3d at 1131. But that promise, I believe, has no more substance than a chimera.

On the single sheet of paper that Michalski signed there can be found no undertaking by Circuit City. That document—styled as the "Associate Receipt of Issue Resolution Package"—in the first instance reflects Michalski's review of a video about the company's arbitration program and her receipt of certain written

materials—copies of the Associate Issue Resolution Handbook, the Circuit City Dispute Resolution Rules and Procedures, and the Circuit City Arbitration Opt–Out Form. It goes on to evidence Michalski's understanding that participation in the arbitration program is voluntary but that she was obliged to complete and return the opt-out form in the event she did not wish to participate. Finally, it sets forth the following acknowledgment by Michalski: "I understand that if I do not mail the [opt-out] Form within 30 calendar days, I will be required to arbitrate all employment-related legal disputes I may have with Circuit City." Nowhere on the page, however, is there any indication of what Circuit City would or would not do in exchange for Michalski's decision not to opt-out of the arbitration program. The acknowledgment does not purport to incorporate the terms of either the Handbook or the Rules and Procedures. Indeed, Michalski—the only signatory—simply acknowledged that she would be required to arbitrate, but not pursuant to any of the rules or procedures set forth elsewhere. *Contrast Johnson v. Circuit City Stores, Inc.*, 148 F.3d 373, 375 (4th Cir.1998) (both applicant and Circuit City signed a dispute resolution agreement providing that "Circuit City agrees to follow this Dispute Resolution Agreement and the Dispute Resolution Rules and Procedures in connection with the Associate whose signature appears above").[1]

My colleagues locate a promise by Circuit City to arbitrate in the separate Associate Issue Resolution Handbook of which Michalski acknowledged receipt. *Ante* at 637. I am inclined to think that the more pertinent document in this regard is the Circuit City Dispute Resolution Rules and Procedures (upon which Circuit City itself

relies, *see* Circuit City Br. 24–25 and Reply Br. 12), for by their own express terms it is those Rules and Procedures which govern arbitrations between the company and its employees. *See* Rule 1 (PURPOSE). The Handbook, by contrast, describes the arbitration program in only the most general terms. Even the allusion to the binding nature of the arbitration that my colleagues reference does not make clear upon *whom* the arbitration is binding. The Rules are much more explicit in this respect:

> The award rendered by the Arbitrator shall be final and binding as to both the Associate and the Company. Either party may appeal the Arbitrator's decision to a court in accordance with the appeal procedures of the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, or the Uniform Arbitration Act of Virginia, 8.01–581.01 *et seq.*

Rule 17 (APPEAL RIGHTS).

What the Rules and Procedures also make clear, however, is that Circuit City remains free to alter the terms and conditions of the arbitration program:

> Circuit City may alter or terminate the Agreement and these Dispute Resolution Rules and Procedures on December 31st of any year upon giving 30 calendar days written notice to Associates, provided that all claims arising before alteration or termination shall be subject to the Agreement and corresponding Dispute Resolution Rules and Procedures in effect at the time the claim arose. An Associate shall be deemed to have accepted a modification or termination of the Dispute Resolution Agreement or the Rules and Procedures by accepting or continuing employment with Circuit

---

1. Circuit City requires only its applicants for employment to sign an agreement in which the (prospective) employee affirmatively agrees to arbitrate. Those like Michalski, who were already employed with the company when it implemented the arbitration program, were automatically deemed participants unless they elected to opt out. Thus, only Michalski's written acknowledgment of the opt-out alternative coupled with her failure to exercise that option evidence her agreement to arbitrate. *See Gibson*, 121 F.3d at 1132 (Cudahy, J., concurring) ("It seems to me that a knowing and voluntary waiver [of a judicial forum] would require at the least, a single and explicit contractual document.").

City after receiving notice of such modification or termination.

Rule 19 (TERMINATION OR MODIFICATION OF DISPUTE RESOLUTION AGREEMENT OR DISPUTE RESOLUTION RULES AND PROCEDURES). Circuit City has thus reserved the power to rewrite any of the Rules and Procedures, including the Rule addressing the binding nature of the arbitration. The company could, in other words, revoke its own promise to abide the results of arbitration, leaving Michalski no choice other than to quit if she did not approve the change. Had Circuit City and the employee signed a contract in which each agreed to arbitrate, as they did in *Johnson*, that scenario would be foreclosed to the company. But here there is no such document. The only agreement by Circuit City to arbitrate is one found in the Rules and Procedures, which can be modified by the company at will.

The putative consideration for Michalski's consent to arbitrate was therefore wholly illusory. Circuit City retained the authority to alter the ground rules and declare, if it wished, that arbitration would be binding upon the employee but not the company. It suffered no detriment nor conferred any benefit upon Michalski in exchange for her agreement to arbitrate. That is true notwithstanding the provision deeming an employee to have "accepted" any subsequent modification in the Rules and Procedures by continuing to work for Circuit City after the change was announced. *See* Rule 19, *supra*. For having lured Michalski into the agreement to arbitrate with one inducement (a mutual promise to arbitrate), Circuit City cannot then retract that inducement and offer another in its stead (continued employment). That kind of "bait and switch" maneuver has no place in the law of contracts, particularly where the employee's civil rights are concerned.

Whatever advantages it may offer employees, arbitration is not without its limitations. As the Equal Employment Opportunity Commission has recognized, there are aspects of arbitration that arguably give employers—particularly large, national employers like Circuit City which arbitrate on a frequent basis—a distinct advantage in that arena. *See* EEOC Notice No. 915.002 (July 10, 1997) <http://www.eeoc.gov/docs/mandarb.txt>. A choice to resolve one's Title VII claims outside of the courtroom—if it is made freely and in return for adequate consideration—commands our deference.

> But courts should be ever mindful that Congress, in enacting Title VII, thought it necessary to provide a judicial forum for the ultimate resolution of discriminatory employment claims. It is the duty of courts to assure the full availability of this forum.

*Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 60 n. 21, 94 S.Ct. 1011, 1025 n. 21, 39 L.Ed.2d 147 (1974). We must therefore exercise vigilance in ascertaining that the arbitration agreements that employers seek to enforce against their employees constitute valid, enforceable contracts. The agreement at issue here lacks the rudimentary element of consideration. Michalski promised to arbitrate her claims against Circuit City, but in return "Circuit City promised nothing," as Judge Reynolds recognized below. R. 18 at 2. I would therefore affirm his decision to deny the motion to stay this suit or compel arbitration.

I respectfully dissent.