**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 99-20017
Summary Calendar

FEDMET CORPORATION,

Plaintiff-Appellant,

VERSUS

M/V BUYALYK, Etc; ET AL,

Defendants,

NOBLE SEAFARER LTD; COMBINED ATLANTIC CARRIERS,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Texas

November 11, 1999

Before SMITH, BARKSDALE, and PARKER, Circuit Judges:

ROBERT M. PARKER, Circuit Judge:

In this maritime cargo case, Plaintiff-Appellant Fedmet Corporation ("Fedmet") brought suit against the M/V Buyalyk; her owner, Noble Seafarer Ltd. ("Noble"); and the charterer and bill of lading issuer, Combined Atlantic Carriers GmbH ("COMBAC"), for damage to a shipment of steel coils. Defendants-Appellees moved separately for dismissal or abatement of the action pending arbitration based on provisions in the bill of lading. The district court granted the motions and dismissed the case without prejudice to re-filing. On appeal, Plaintiff-Appellant argues that the district court erred when it failed to stay rather than dismiss the case. We affirm.

Defendant-Appellee COMBAC issued a bill of lading for a shipment of steel coils that were loaded onto the ocean-going vessel M/V Buyalyk at Sczecin, Poland in February 1997.  The M/V Buyalyk traveled to the United States and discharged its cargo in Houston, Texas, and New Orleans, Louisiana in March and April 1997, respectively.

Plaintiff-Appellant Fedmet alleges that the coils arrived in damaged condition.  On March 16, 1998, Fedmet commenced this suit in the United States District Court for the Southern District of Texas, Houston Division, seeking to recover approximately $125,000 for damage to the cargo.  Although Fedmet named the M/V Buyalyk as a defendant in this action, Fedmet did not arrest the vessel.  Accordingly, the action proceeded solely against COMBAC and Noble *in personam*.

On June 5, 1998, COMBAC moved to dismiss and/or abate or stay the case primarily on the basis that the terms of the bill of lading required the parties to resolve any dispute through arbitration in Germany pursuant to the German Maritime Arbitration Association ("GMAA") Rules.  Noble filed a similar motion on June 30, 1998.  Fedmet opposed these motions on the basis that the arbitration clause was ambiguous and unworkable for three parties under GMAA rules.

The district court determined that the arbitration clause was enforceable and that all issues raised in the action were arbitrable.  The district court granted both motions on September

28, 1998, and dismissed the case without prejudice in favor of arbitration in Germany. On October 5, 1998, Fedmet moved to alter or amend the judgment, pursuant to Federal Rule of Civil Procedure 59(e), arguing that the case should have been stayed rather than dismissed. Fedmet protested that a dismissal left it with no effective remedy since the arbitration would likely be subject to a one-year statute of limitations.[1] For the first time, Fedmet argued that the matter was governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 (1994) *et seq.*, and that pursuant to § 3 of the FAA, the court should have exercised its discretion to retain jurisdiction over the case pending arbitration. The district court denied Fedmet's motion and Fedmet appealed. This appeal does not challenge the validity of the arbitration clause; the only question before us is whether the district court erred in its decision to dismiss without prejudice rather than stay the case pending arbitration.

## II.

We have previously held that district courts have discretion to dismiss cases in favor of arbitration under 9 U.S.C. § 3. *See Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992). Because a district court is afforded discretion in this determination, we review the decision to dismiss for abuse of that

---

[1] Although Fedmet did not originally invoke the Carriage of Goods by Sea Act ("COSGA"), 46 U.S.C. § 1300 (1994) *et seq.*, all parties agreed that provisions of the bill of lading mandated that COSGA governed the dispute. COSGA imposes a one-year statute of limitations on cargo damage actions. See 46 U.S.C. § 1303(6).

3

discretion.  *See id.*

## III.

### A.

From the outset, it bears repeating that we remain "mindful of the strong federal policy favoring arbitration." *United Offshore Company v. Southern Deepwater Pipeline Co.*, 899 F.2d 405, 408 (5th Cir. 1990).  The preference for arbitration is such that any "[d]oubts as to the availability of arbitration must be resolved in favor of arbitration." *Id.*  This partiality is reflected in § 3 of the FAA which provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (1994).

In its Rule 59(e) motion, Plaintiff-Appellant argued that § 3 governed this litigation.  Now on appeal, Fedmet introduces a new argument, namely that this is an admiralty case commenced *in rem*, and therefore, it is § 8 of the FAA, not § 3, that controls.[2] Previously, Fedmet argued that under § 3 the district court *should not* have dismissed the case; Fedmet now argues that under § 8 the

---

[2] Initially, Fedmet argued that the arbitration clause was defective and should not be enforced at all.

district court *could not* dismiss the case.[3]

Under the FAA, a party is entitled to commence legal proceedings by libel and seizure of the vessel or other property. See 9 U.S.C. § 8. Specifically, Section 8 of the FAA provides:

> If the basis of jurisdiction be a cause of action otherwise justiciable in admiralty, then, notwithstanding anything herein to the contrary, the party claiming to be aggrieved may begin his proceeding hereunder by libel and seizure of the vessel or other property of the other party according to the usual course of admiralty proceedings, and the court shall then have jurisdiction to direct the parties to proceed with the arbitration and shall retain jurisdiction to enter its decree upon the award.

9 U.S.C. § 8 (1994). The purpose of this section is to afford a measure of protection to the aggrieved party by providing a means of obtaining security for arbitration. *See The Anaconda v. American Sugar Refining Co.*, 322 U.S. 42, 46 (1944). Under the FAA scheme, the federal district court where the action is brought retains jurisdiction over the vessel or other property until an arbitration award is rendered and the award is satisfied. The important distinction between § 3 and § 8 is that the latter does not appear to afford the district court discretion to dismiss when

---

[3] Naturally, defendants-appellees object to the injection of this new argument as a breach of the long standing rule that "a party may not present a wholly new issue in a reviewing court." *Crawford v. Falcon Drilling Co.*, 131 F.3d 1120, 1123 (5th Cir. 1997) (quoting 9A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2558, at 599 (2d ed. 1995). Plaintiff-appellant claims that it argued broadly for a stay rather than dismissal, and that we are free to review any legal theory upon which the district could have relied. In this instance, the timeliness of Plaintiff-Appellant's argument has no affect on the outcome of this appeal since § 8 is inapplicable to this action.

the case is referred to arbitration.[4]

Of course, in this case there was no arrest of the vessel. Therefore, Plaintiff-Appellant has failed to satisfy the basic requirement found in the first portion of § 8 that the aggrieved party "begin [its] proceeding hereunder by libel and seizure of the vessel." 9 U.S.C. § 8 (1994). Plaintiff-Appellant acknowledges this fact but explains that it "was unable to arrest the vessel" or otherwise "obtain jurisdiction over the vessel in this case." It is Fedmet's position that its failure to arrest the vessel is not fatal to its argument because "this Court has held in *E.A.S.T., Inc. of Stamford, Conn. M/V ALAIA*, 876 F.2d 1168, 1177-78 (5th Cir. 1989), that a lack of *in rem* jurisdiction over the vessel does not affect the operation of Section 8 in an admiralty case." We disagree.

In *E.A.S.T.*, the parties agreed to charter the M/V ALAIA, but upon inspection of the vessel, the charterer, E.A.S.T., determined that she was unfit and unseaworthy. E.A.S.T. rejected the ship and filed an action *in rem* under 9 U.S.C. § 8 in federal district court to compel arbitration and to obtain security for the arbitration award by arrest of the vessel. *See id.* at 1169-70. The vessel's owners claimed that *in rem* jurisdiction was an insufficient basis upon which to refer the parties to arbitration. We held that the owners had submitted to the district court's *in personam*

---

[4] This circuit has yet to address the question of whether a district court retains some measure of discretion under § 8 and we need not take a definitive position on the issue today.

jurisdiction, and therefore there was no need to reach the question of whether *in rem* jurisdiction was in fact an adequate basis for referral. *See id.* at 1178. We did not hold that parties were free to invoke § 8 without first satisfying its *in rem* jurisdiction requirement.

Plaintiff-Appellant's argument is based on a misreading of our holding in *E.A.S.T.* Yet, even if a narrow equitable exception were available, the facts of this case would not support its application. This is not a case in which an aggrieved plaintiff was left standing on the dock, complaint in hand, as the vessel escaped to sea. The plaintiff in this case waited approximately 12 months to commence this lawsuit. The fact that the M/V Buyalyk was not still waiting in port should not have been a surprise.

Having discarded § 8 as inapplicable to the case before us, we turn to the question of whether dismissal of the case was proper under § 3 of the FAA.

## B.

Although the express terms of § 3 provide that "a stay is mandatory upon a showing that the opposing party has commenced suit upon any issue referable to arbitration under an agreement in writing for such arbitration ...," *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992), we have interpreted this language to mean only that the district court cannot deny a stay when one is properly requested. *Id.* "This rule, however, was not intended to limit dismissal of a case in the proper circumstances." *Id.* If all of the issues raised before the district court are

7

arbitrable, dismissal of the case is not inappropriate. *Id.* As we explained in *Alford*:

> Although we understand that plaintiff's motion to compel arbitration must be granted, we do not believe the proper course is to stay the action pending arbitration. Given our ruling that all issues raised in this action are arbitrable and must be submitted to arbitration, retaining jurisdiction and staying the action will serve no purpose. Any post-arbitration remedies sought by the parties will not entail renewed consideration and adjudication of the merits of the controversy but would be circumscribed to a judicial review of the arbitrator's award in the limited manner prescribed by law.

*Id.* (quoting *Sea-Land Service, Inc. v. Sea-Land of Puerto Rico, Inc.*, 636 F. Supp. 750, 757 (D. Puerto Rico 1986)).

In this case, any dispute arising from the shipment of the steel coils was governed by the provisions of the bill of lading and the contract of carriage. The bill of lading expressly provided that all claims were to be brought and decided in Bremen, Germany by arbitration under GMAA rules. Rather than comply with this provision, Fedmet chose to file suit in federal court approximately one year after the allegedly damaged cargo arrived at its destination ports. The prospect that the arbitration may now be time-barred is simply a consequence of Fedmet's own making. Had Fedmet not waited a year to act, and then to act in circumvention of the express provisions of the bill of lading, the consequences of a dismissal without prejudice would not be so potentially harmful. At this late juncture, neither equity nor judicial economy favor Fedmet's position.

In the case at hand, the district court determined that all of the claims and issues presented were subject to arbitration under

the provisions of the bill of lading. In light of this determination, the district court concluded that dismissal without prejudice was the preferred means of enforcing the governing provisions of the bill of lading and permitting the parties to conduct arbitration in Germany. The district court acted well within its discretion when it dismissed this case without prejudice to re-filing.

## IV.

Accordingly, for the reasons set forth above, we AFFIRM the judgment dismissing without prejudice Fedmet's claims.