Robert TUPPER, Plaintiff,

v.

BALLY TOTAL FITNESS HOLDING
CORP., Defendant.

Troy Fowler, Plaintiff,

v.

Bally Total Fitness Holding
Corp., Defendant.

Nos. 01–C–1137, 02–C–55.

United States District Court,
E.D. Wisconsin.

Feb. 27, 2002.

John K. Brendel, for Plaintiffs.

D. Winthrop Hass, for Defendant.

## DECISION AND ORDER ON DEFENDANT'S MOTION TO DISMISS AND COMPEL ARBITRATION

CALLAHAN, United Staes Magistrate Judge.

### I. PROCEDURAL BACKGROUND

On October 15, 2001, the plaintiff in Case No. 01–C–1137, Robert Tupper ("Tupper"), filed a complaint in the Milwaukee County Circuit Court. On November 7, 2001, the defendant, Bally Total Fitness Holding Corporation ("Bally"), removed the case to the United States District Court for the Eastern District of Wisconsin on the basis of diversity of citizenship, pursuant to 28 U.S.C. §§ 1332 and 1441. Thereafter, on November 12, 2001, Tupper filed an amended complaint. In his amended complaint Tupper alleges that, as a result of the termination of his employment with Bally, he: (1) lost wages and suffered other damages contrary to the "implied contract between the parties"; (2) was improperly denied certain bonus compensation; and, (3) was wrongfully denied certain vested and future rights in stock options. On December 11, 2001, Bally filed a motion to dismiss the action and to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 3 and 4. Along with its motion, Bally filed, inter alia, a memorandum of law, an affidavit of Bally's Regional Director of Human Resources, Deborah Deters ("Deters"), and a copy of a document entitled "Bally Total Fitness Corporation Employment Dispute Resolution Procedure" ("EDRP"), including a copy of the signature page of the EDRP signed by plaintiff Tupper and Deters on April 14, 1998.

On December 28, 2001, the plaintiff in Case No. 02–C–55, Troy Fowler ("Fowler"), filed a complaint in Waukesha County Circuit Court naming Bally as the defendant. In his complaint, Fowler, like Tup-

per, alleges that his employment with Bally was "unjustly terminated" on or about December 8, 1999. He alleges that his termination violated the "implied contract between the parties." As a consequence thereof, he claims that he sustained wage loss and other damages, was improperly denied certain bonus compensation, and was wrongfully denied certain vested and future rights in stock options. On January 17, 2002, Bally removed the case to the United States District Court for the Eastern District of Wisconsin on the basis of diversity of citizenship, pursuant to 28 U.S.C. §§ 1332 and 1441. Thereafter, on January 18, 2002, Bally filed a motion to dismiss the action and to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 3 and 4. Along with its motion, Bally filed, inter alia, a memorandum of law, an affidavit of Bally's Regional Director of Human Resources, Deborah Deters ("Deters"), and a copy of the "Bally Total Fitness Corporation Employment Dispute Resolution Procedure" ("EDRP"), including a copy of the signature page of the EDRP signed by plaintiff Fowler and Deters on May 13, 1998.

On January 18, 2002, Bally filed a motion to consolidate the above two actions, pursuant to Civil Local Rule 42.1, "regarding the pending motion to dismiss and compel arbitration because both actions involve identical factual and legal issues against Bally." (Bally's Mot. to Consolidate at 1.) No response to the motion was filed by either plaintiff. On February 11, 2002, this court granted the motion to consolidate.

In accordance with 28 U.S.C. § 636(c) and Rule 73(b) of the Federal Rules of Civil Procedure, Tupper, Fowler, and Bally have all consented to have this court conduct all proceedings in this case, including a bench or jury trial, and order the entry of final judgement. For the reasons which follow, the defendant's motion to dismiss and compel arbitration is granted.

## II. FACTUAL BACKGROUND

The allegations of Tupper's amended complaint, the allegations of Fowler's complaint, and the information set forth in Bally's submissions demonstrate that Bally is in the business of selling memberships for use of its physical fitness equipment at several locations in Milwaukee County, Wisconsin. Tupper, who previously had been employed by Bally in Texas, was transferred to Wisconsin, and was employed at Bally's Wisconsin operations when his employment was terminated, without prior notice, on or about December 8, 1999. As of the time of his termination in December, 1999, Tupper had been employed at Bally for approximately ten years. Furthermore, Tupper had worked for Bally in Wisconsin from on or about May 10, 1997, until his termination in December, 1999. While in Wisconsin he served as Area Director for Bally's Wisconsin operations.

Fowler, who also had previously been employed by Bally in Texas, was transferred to Wisconsin. He was employed at Bally's Wisconsin operations when his employment was terminated, without prior notice, on or about December 8, 1999. As of the time of his termination in December, 1999, Fowler had been employed at Bally for approximately eight years. Fowler had worked for Bally in Wisconsin from on or about May 10, 1997, until his termination in December, 1999. While in Wisconsin he served as Area Supervisor for Bally's Wisconsin operations.

In or about April, 1998, Bally implemented its Employee Dispute Resolution Procedure ("EDRP") in Wisconsin. On or about April 14, 1998, Tupper was given a copy of the EDRP and he executed the last page of the EDRP. On or about May

13, 1998, Fowler was given a copy of the EDRP and he executed the last page of the EDRP.

The last page of the EDRP reads as follows:

*Voluntarily [sic] Agreement*

EMPLOYEE ACKNOWLEDGES THAT HE/SHE HAS CAREFULLY READ THIS EDRP, THAT HE/SHE UNDERSTANDS ITS TERMS, THAT ALL UNDERSTANDINGS BETWEEN THE EMPLOYEE AND THE EMPLOYER RELATING TO THE SUBJECTS COVERED IN THIS EDRP ARE CONTAINED IN IT, AND THAT HE/SHE HAS ENTERED INTO THIS EDRP VOLUNTARILY AND NOT IN RELIANCE ON ANY PROMISES OR REPRESENTATIONS BY THE EMPLOYER OTHER THAN THOSE CONTAINED IN THIS EDRP ITSELF.

EMPLOYEE FURTHER ACKNOWLEDGES THAT HE/SHE HAD A REASONABLE PERIOD OF TIME TO REVIEW AND CONSIDER THIS EDRP BEFORE SIGNING IT AND THAT HE/SHE HAD AN OPPORTUNITY TO DISCUSS THIS EDRP WITH HIS/HER PERSONAL LEGAL COUNSEL AND HAS USED THAT OPPORTUNITY TO THE EXTENT HE/SHE WISHES TO DO SO.

The EDRP applies to any "Covered Dispute," whether arising during or after the termination of employment; the EDRP provides that it is intended "to substitute for court action and any administrative action, as the exclusive, final, binding method to resolve the Dispute, whether based on federal, state, or other governmental constitution, statute, ordinances, or regulation." (EDRP ¶ ¶ 1.5 and 2.6).

Paragraph 1.1 defines "Covered Disputes" as follows:

With the exceptions set forth below, the parties agree to submit to this EDRP, any and all Disputes between the parties that arise from or relate to the Employee's employment with the Employer, and that concern legally protected rights for which a court or administrative tribunal, in the absence of this EDRP, would be authorized by law to grant relief. By way of example, the type of claims covered by this EDRP include, but are not limited to, claims for wages or other compensation due; claims for breach of any contract or covenant, express or implied, tort claims; claims for discrimination and/or harassment, including but not limited to discrimination and/or harassment based on race, sex, pregnancy, religion, national origin, age, marital status, sexual orientation, mental or physical disability, or mental condition; claims for benefits, except as excluded below; and claims for violation of any federal, state, or other governmental constitution, statute, ordinance or regulation.

(EDRP ¶ 1.1.)

The EDRP requires Bally employees to resolve their employment-related disputes with Bally using a three-step procedure. First, the employee must exhaust Bally's internal mechanisms for resolving disputes. (EDRP ¶ 6.1.) If the dispute cannot be resolved internally, the parties are then required to mediate. (EDRP ¶ 6.6.) If mediation is unsuccessful, the parties are required to submit their claims to binding arbitration. (EDRP ¶¶ 8.1–21.4.)

The introductory language of the EDRP speaks to the consideration given by each of the parties in entering into the EDRP. Specifically, it reads as follows:

BALLY TOTAL FITNESS CORPORATION (hereinafter referred to as "Bally" or the "Employer") considers it in everyone's best interest that all employment-related Disputes be submitted exclusively to final and binding arbitration,

pursuant to the Bally EDRP. Bally recognizes that differences may arise between the Employer and the undersigned (the "Employee") arising out of or relating to the Employee's employment with the Employer, or the termination of that employment, and recognizes that resolution of any differences or Disputes is often time consuming and expensive. The Employer and the Employee (collectively hereinafter referred to as the "Parties") agree to submit, for resolution, as provided in this Employment Dispute Resolution Procedure (hereinafter referred to as the "EDRP"), any Covered Disputes, in order to gain the mutual benefit of resolving employment-related disputes in a timely and cost-effective manner. Each Party's promise to resolve Disputes in accordance with the provisions of this EDRP, rather than through the courts, is consideration for the other Party's like promise. Because the employment relationship can be terminated by either the Employee or the Employer for any reason not otherwise prohibited by law, with or without cause, it is agreed that the Employer's employment and/or continued employment is additional consideration to Employee for Employee's promises herein. Employees are urged to review this EDRP in detail. Employees are free to seek review of this EDRP by legal counsel.

Subsequent to his termination, Tupper filed a charge of discrimination before the Equal Rights Division, Case No: 20002237. More specifically, on June 5, 2000, Tupper filed a discrimination charge, alleging perceived sexual orientation discrimination, at the Wisconsin Department of Workforce Development. A hearing involving Tupper's discrimination claim was commenced before the Equal Rights Division on September 11, 2001, and was continued until March 11, 2002.

## III. ANALYSIS

As previously stated, Bally has filed a motion, pursuant to 9 U.S.C. §§ 3 and 4, in which it seeks an order dismissing both actions and ordering the parties to arbitrate their claims. The Federal Arbitration Act represents a " 'strong federal policy favoring arbitration as a means of dispute resolution.' " *Hodge Bros., Inc. v. DeLong Co.*, 942 F.Supp. 412, 414 (W.D.Wis.1996) (quoting *Morrie Mages & Shirlee Mages Found. v. Thrifty Corp.*, 916 F.2d 402, 405 (7th Cir.1990)). The Act provides that a written agreement to arbitrate a dispute arising out of a contract or transaction involving commerce "shall be valid, irrevocable, and enforceable save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

The issues to be addressed in this action all center upon the validity of the EDRP and, more precisely, the arbitration clause contained therein. If the arbitration clause is valid, then sections 3 and 4 of Title 9 of the United States Code come into play. Those sections, respectively, provide for the stay of any action in federal court "upon any issue referable to arbitration under an agreement in writing for such arbitration," and for an order "directing the parties to proceed to arbitration in accordance with the terms of the agreement" where one party has failed, neglected, or refused "to arbitrate under a written agreement." 9 U.S.C. §§ 3 and 4. "Under the terms of the FAA, district courts have no discretion to refuse a request for a stay and shall direct the parties to proceed to arbitration on issues covered by an arbitration agreement." *Morrie Mages & Shirlee Mages Found.*, 916 F.2d at 405–06.

In opposition to Bally's motion, Tupper argues that the EDRP, and more particularly, its arbitration clause, are unenforce-

able. He posits four grounds in support of such argument: (1) that the ERDP and its arbitration clause fail for lack of consideration; (2) that the time limit for complaints under the EDRP is so restrictive that to enforce it would in effect deprive Tupper of any remedy for his claimed damages; (3) that the EDRP so severely limits the remedies available to a complainant thereunder that Tupper would in effect be deprived of any remedy for his claimed damages; and, (4) that Bally's failure to seek arbitration of Tupper's charge of discrimination before the Equal Rights Division amounted to a waiver of Bally's right to compel arbitration with respect to the allegations in this action.

In opposition to Bally's motion, Fowler, like Tupper, asserts that the EDRP is not supported by adequate consideration. Fowler also asserts, in conclusory fashion, that he was "coerced into signing such agreement."[1] Finally, Fowler argues that:

> [t]he contract between the Plaintiff and the Defendant corporation regarding stock options is clear and unambiguous and specifically vests stock option rights in the Plaintiff. Such stock option rights, having already been vested in Plaintiff FOWLER (and also Plaintiff TUPPER), essentially belong to those two gentlemen already at this time and there is nothing in dispute nor still to be decided further by an arbitrator. The lawsuit primarily concerns itself with forcing the Defendant to deliver the property of each past employee, TROY FOWLER and ROBERT TUPPER.[2]

(Fowler's Reply in Opp'n to Def.'s Mot. to Dismiss & Compel Arbitration ¶ 1.)

### 1. Lack of Consideration

An agreement to arbitrate, including one entered into between an employer and an employee, is like any other contract. *See Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1130 (7th Cir.1997). "If there is no contract there is to be no forced arbitration. In determining whether a valid arbitration agreement arose between the parties, a federal court should look to the state law that ordinarily governs the formation of contracts." *Id.* (citations omitted); *see also Michalski v. Circuit City Stores, Inc.*, 177 F.3d 634, 636 (7th Cir.1999).

In this action it is the contract law of the state of Wisconsin that must be looked to because it is in Wisconsin that the plaintiffs were employed, that they signed the EDRP, and that their employment was terminated. *See Michalski*, 177 F.3d at 636. "In order for a contract to be enforceable under Wisconsin law, there must be consideration ... which may be either a detriment to the promisor or a benefit to the promisee." *Id.* (citing *Lovett v. Mt. Senario College, Inc.*, 154 Wis.2d 831, 454 N.W.2d 356, 358 (Wis.Ct. App.1990)).

Tupper argues that "the sole consideration given to the employee by the employer, according to the introductory paragraph [of the EDRP], is to give to the employee the obligation to go to arbitration, as opposed to his normal right to use the state and federal court systems, together with the threat that should he not execute the agreement, the employer may terminate him." (Tupper's Mem. in Opp'n to Def.'s Mot. to Dismiss & Compel Arbi-

---

1. In his "Reply in Opposition to Defendant's Motion to Dismiss & Compel Arbitration," Fowler asserts that both he and Tupper "were coerced into signing such agreement." However, nowhere in his submissions does Tupper make such an allegation.

2. Just as with respect to the "coercion" allegation, Tupper did not advance this argument in his brief in opposition to the defendant's motion.

tration ("Tupper's Br.") at 2.) In other words, he argues that the provisions of the EDRP are so one-sided that the EDRP fails for lack of consideration. More precisely, he points out that "the employer continues to reserve onto itself the right to terminate at any time at their [sic] will despite the execution by the employee. This is clearly evidenced by a review of Article 24.1 of the document in which the employer reinforces its right to continue an 'at will' relationship despite signing the agreement." (Tupper's Br. at 2.) Moreover, "[t]he lack of consideration to an employee is further evidenced by a reading of Article 25.1 in which the employer reserves the right to modify or terminate the agreement in part or in its entirety upon thirty (30) days notice." (Tupper's Br. at 2.)

To be sure, paragraph 24.1 of the EDRP expressly maintains the at-will status of the employee. And, because of such status, the employer can continue to terminate the employee "without recourse at any time for any or no reason at all." (EDRP ¶ 24.1.) However, under the language of paragraph 24.1, the employee also retains his or her right to "voluntarily terminate his/her employment with the Employer at any time for any reason." (EDRP ¶ 24.1.) Stated another way, maintenance of the at-will employment relationship preserves for both parties certain flexibility.

Tupper is also correct when he states that, under paragraph 25.1 of the EDRP, Bally has reserved the right to modify or terminate the agreement on thirty days notice to the employee, and there is no such reciprocal provision available to the employee. Aside from the fact that to give each employee such right would convert the EDRP into a totally unmanageable document (for each employee might from time to time have his or her own ideas of how the EDRP should be modified), I am

nevertheless not persuaded that the existence of such admittedly one-sided provision is sufficient to invalidate the entire document. This is because there is otherwise sufficient mutuality of promises in the ERDP to provide consideration for the contract.

As noted previously, the introductory language of the EDRP makes clear that both Bally and the employee "promise to resolve 'Disputes' in accordance with the provisions of this EDRP, rather than through the courts." Thus, the obligation to resolve "Covered Disputes" through the mechanism provided by, and under rules set forth in, the EDRP is not one-sided. This mutual promise to resolve any "Covered Dispute" in accordance with the provisions of the EDRP provides sufficient consideration to validate the EDRP. In *Matterhorn, Inc. v. NCR Corp.,* 763 F.2d 866, the Seventh Circuit stated:

> If the agreement of one party to arbitrate disputes is fully supported by the other party's agreement to do likewise, there is no need to look elsewhere in the contract for consideration for the agreement to arbitrate; so objections to other parts of the contract, based on fraud or unconscionability or mistake or whatever, need not spill over to the arbitration clause.

*Matterhorn,* 763 F.2d at 869.

Indeed, more recently, in *Michalski v. Circuit City Stores, Inc.,* 177 F.3d 634 (7th Cir.1999), it was this principle upon which the Seventh Circuit relied when, in applying Wisconsin law, it found the arbitration clause in that case to be supported by adequate consideration.

> The section of the Handbook entitled "BINDING ARBITRATION OF LEGAL DISPUTES," under the subsection "What is arbitration?," states "In arbitration, you and the company agree to submit a legal dispute to an arbitrator

who ... renders a final, binding decision to your legal claim." We conclude that this description of arbitration, in the context of this case, clearly indicates a mutual promise to arbitrate, binding both parties, and constitutes sufficient consideration.

*Michalski*, 177 F.3d at 637; *see also Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1131 (7th Cir.1997) ("Often, consideration for one party's promise to arbitrate is the other party's promise to do the same.").

To be sure, the above-cited cases dealt with the question of adequacy of consideration to support an arbitration clause. The EDRP in the case at bar contains more provisions than just an arbitration clause. Indeed, the EDRP governs the procedure to be followed by the parties after a "Covered Dispute" arises, including: (1) the time by which notice of the basis of an employee's "Dispute" must be given to the employer (EDRP ¶ 6.1); (2) the time by which the employer must give a written answer to the employee's claim and set forth any counterclaim in response thereto (EDRP ¶ 6.3); (3) the requirement that there be an in-person meeting in an attempt to informally resolve the Dispute (ERDP ¶ 6.5); and, (4) the requirement that a mediation be conducted prior to there being any arbitration (EDRP ¶ 6.6). However, to the extent that the plaintiffs argue there is insufficient consideration to support that provision of the EDRP which requires them to arbitrate their dispute, the Seventh Circuit's holdings in the aforecited cases require that their arguments be rejected. This is because the EDRP requires that both parties, and not just the employee, submit any "Covered Disputes" to arbitration.

■ Under the law of Wisconsin, the party seeking to avoid a contract has the burden of proving failure of consideration. *See NBZ, Inc. v. Pilarski*, 185 Wis.2d 827, 520 N.W.2d 93, 97 (Ct.App.1994). The plaintiffs have not satisfied that burden in this case. To the contrary, that the EDRP expressly requires *both* parties to submit any "Covered Dispute" to the arbitration process set forth in the EDRP provides sufficient consideration for the contractual obligation to do so.

## 2. The Time Limitation

■ Paragraph 4.1 of the EDRP reads as follows:

> The Parties are committed to resolving their Disputes expeditiously. Accordingly, as to any Dispute(s) covered by this EDRP, the Parties agree to waive all statutes of limitations that would apply in a court of law or administrative proceeding, and to submit the Dispute no later than one year after the Dispute arises. Failure to submit a Dispute within these time limits is intended to, and shall to the furthest extent permitted by law, be a waiver and release with respect to the Dispute, and, in the absence of a timely submitted Dispute, an Arbitrator has no authority to resolve the Dispute or render an Award. The time limit for initiating this EDRP shall not be subject to tolling, equitable or otherwise.

(EDRP ¶ 4.1.)

Tupper argues that the "dispute at bar was initiated in December, 1998 [3], and, more than a year having passed since the date of dispute, should the Defendant prevail in its request regarding this motion, the next step would likely be to deny the Plaintiff in his entirety his right to pursue

---

3. The court assumes that Tupper means December, 1999, since it was on December 8, 1999, that his employment was terminated.

Either way, however, more than one year had passed by the time this action was commenced in December, 2001.

the return of monies legitimately due him as vested rights in his stock options." (Tupper's Br. at 3). Consequently, he requests that Bally's motion be denied because "to grant the motion will leave the Plaintiff with no remedy and would be most unjust." (Tupper's Br. at 4).

■ Parties can by contract agree upon limitation periods. Indeed, in *Chilcote v. Blue Cross & Blue Shield United of Wisconsin*, 841 F.Supp. 877 (E.D.Wis.1993), the court stated:

> "[I]t is well established that, in the absence of a controlling statute to the contrary, a provision in a contract may validly limit, between the parties, the time for bringing an action on such contract to a period less than that prescribed in the general statute of limitations, provided that the shorter period itself shall be a reasonable period." *Order of United Commercial Travelers v. Wolfe*, 331 U.S. 586, 608, 67 S.Ct. 1355, 1365, 91 L.Ed. 1687 (1947). This rule is followed in the 7th Circuit and in Wisconsin.

*Chilcote*, 841 F.Supp. at 879.

Tupper does not argue that parties cannot agree to a limitations period shorter than that provided for by statute. Nor does he argue that the one-year period provided for by the EDRP in which either party thereto could give notice of a "Dispute" is unreasonably short. Indeed, that he was able to file with the Equal Rights Division a discrimination charge on June 5, 2000, i.e., less than six months after he was terminated, would belie such argument. Instead, he argues that to enforce such provision would be "unjust" because it is now too late to pursue such "Dispute" under the terms of the EDRP.

Tupper cites no authority for the proposition that this court should not enforce the limitations period set forth in the EDRP because it is "unjust." And he would be hard-pressed to do so. This is especially so given that both Bally and he were bound by the very same one-year limit on submitting disputes for consideration and resolution.

### 3. The Available Remedies

■ Tupper also argues that the EDRP so severely limits the remedies available to a complainant thereunder that Tupper would in effect be deprived of any remedy for his claimed damages were this matter proceed under the EDRP. Specifically, he argues:

> Article 19.1 limits an arbitrator's award to back pay, less interim earnings, and front pay up to a maximum of two (2) years and sets forth the manner of periodic payments by which the employer can pay off the award. Other than a very limited ability to assess punitive damages as well, it makes no provision for granting the arbitrator authority to award the Plaintiff for his losses due to the wrongful taking of his stock option rights by the employer. In effect, there is no adequate remedy as provided by law which is permissible in the arbitration agreement that the Defendant seeks to impose. In fact, there is no remedy awardable for this claim in the dispute resolution.

(Tupper's Br. at 3.)

My review of the EDRP reveals that, contrary to Tupper's argument, the EDRP does grant the arbitrator sufficient authority to fully compensate Tupper for his damages (assuming of course, that the dispute is not time-barred under the EDRP). Paragraph 19 of the EDRP speaks to the arbitrator's authority to award damages and other relief. It begins by expressly stating that "[t]he Arbitrator is permitted to award only those remedies in law or equity requested by the Parties and which the Arbitrator determines to be supported by the credible relevant evidence subject to the following limitations." (EDRP ¶ 19.) Thereafter, the EDRP does set

some parameters on how much back pay and punitive damages can be awarded. It also sets forth some time lines over which certain damage awards are to be paid. However, the EDRP does not prevent the arbitrator from awarding a party such as Tupper relief arising from his being wrongfully deprived certain stock options, so long as he has demonstrated entitlement thereto "by the credible, relevant evidence." Stated another way, none of the "limitations" to which paragraph 19.1 is subject include anything that could be construed to prevent the arbitrator from awarding Tupper damages incurred by his being denied stock options.

#### 4. Waiver

■ Finally, Tupper argues that Bally waived its right to invoke the arbitration provisions of the EDRP by failing to seek to arbitrate the discrimination charge Tupper filed with the Equal Rights Division in 2000. Specifically, Tupper argues:

> Although the Defendants [sic] have been engaged in an administrative proceeding since early 1999 with this Plaintiff after the Plaintiff filed a complaint with the Equal Rights Division, Case no: 20002237 regarding his charge of discrimination against the same Defendant claiming that the company terminated him by reason of their [sic] perceived sexual preference of the Plaintiff, at no time has this Defendant ever raised the issue of compelling arbitration pursuant to the agreement now set forth before this court. That dispute, according to the agreement in Article I, would be similarly subject to the terms of the Dispute Resolution Procedure but was either ignored or waived by the Defendant.

(Tupper's Br. at 1–2.)

In response to Tupper's argument of waiver Bally argues, first of all, that failure to arbitrate an administrative claim for discrimination does not preclude a party from raising the issue of arbitration in a subsequent lawsuit, involving different legal issues than that involved in the administrative claim. Moreover, Bally argues that, in determining whether a party waived arbitration, the court must "use an 'overall evaluation of the involvement and conduct up to the time of the request for arbitration of the party requesting arbitration.'" *Fleet Mortgage Corp. v. Lynts,* 885 F.Supp. 1187, 1191 (E.D.Wis.1995). Citing *Fleet,* Bally argues that specific indicators of waiver include: (1) the deadlines for motions had passed; (2) the motion was not filed in time with respect to the scheduling order; (3) the case had been pending for a long time; (4) the trial date had been set; and (5) there was nothing in defendant's answer requesting arbitration. And none of those factors are present in this case. Finally, Bally argues that, "based on Section 2.9 of the EDRP, Tupper had the express right to participate in administrative proceedings of the Equal Rights Division ... Accordingly, the fact that Plaintiff filed an administrative charge with the EEOC with respect to a claim completely unrelated to the instant matter has no bearing on the arbitrability of the present lawsuit." (Bally's Reply Br. at 3–4).

In *Envirex, Inc. v. K.H. Schussler Fur Umwelttechnik GMBH,* 832 F.Supp. 1293 (E.D.Wis.1993), the court stated:

> Under Section 3 of Title 9 of the United States Code, this court must stay the proceedings of an action pending arbitration upon application of one of the parties if the issue involved in the proceeding is referable to arbitration under an agreement in writing, provided that the applicant for the stay has not defaulted in proceeding with such arbitration. Therefore, the threshold question is whether or not the defendants have defaulted by waiving any rights they may have to arbitration. The federal

courts have developed a strong presumption in favor of arbitration and do not lightly infer waiver. *Midwest Window Systems, Inc. v. Amcor. Indus., Inc.,* 630 F.2d 535, 536 (7th Cir.1980). Thus, the party objecting to a stay pending arbitration bears a heavy burden of showing that the applicant for stay has waived its right to arbitration by acting in a manner inconsistent with the arbitration right. *Morrie Mages & Shirlee Mages Found. v. Thrifty Corp.,* 916 F.2d 402, 405 (7th Cir.1990).

*Envirex,* 832 F.Supp. at 1295.

In my opinion, Tupper has not demonstrated that Bally acted in a manner inconsistent with its arbitration right. To begin with, these two civil actions were filed in state court on October 15, 2001, and December 28, 2001, respectively. Within days of their respective removals to this court, Bally filed motions to dismiss the actions and to compel arbitration of the claims set forth therein. Thus, Bally did not sit on its hands while the actions proceeded toward trial.

Furthermore, that Bally did not seek to arbitrate Tupper's discrimination charge with the Equal Rights Division does not suggest waiver of the right to arbitrate the claims set forth in Tupper's complaint. This is because, simply stated, none of the claims set forth in Tupper's complaint are for discrimination. And besides, Paragraph 2.9 does expressly provide that "[n]othing herein shall preclude the Employee from pursuing or participating in administrative proceedings of the Equal Employment Opportunity Commission, or similar applicable agency." (EDRP ¶ 2.9.) All that the EDRP requires under such circumstances is that the employee nevertheless still "submit *eligible* disputes under the EDRP, and . . . first submit the dispute under the EDRP before pursuing any administrative remedy." (EDRP ¶ 2.9) (emphasis provided).

Moreover, in 1998, when Tupper and Bally executed the EDRP, the question of whether a party to an employment agreement which contained an arbitration clause could be required, *under the Federal Arbitration Act,* to arbitrate employment related claims (including discrimination charges) had not been settled by the Supreme Court. It was not until March 21, 2001, when the United States Supreme Court issued its decision in *Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001), that such question was answered with finality. Under such circumstances, that Bally may not have demanded in June, 2000, that Tupper's discrimination charge be arbitrated could not reasonably be construed to amount to a waiver by Bally of its right under the EDRP to have the Tupper's claims in this action be arbitrated.

### 5. Coercion

In his brief, Fowler asserts that he was "coerced into signing" the EDRP. (Fowler's Reply in Opp'n to Def.'s Mot. to Dismiss & Compel Arbitration ("Fowler's Br.") ¶ 2.) He offers no basis for such assertion. Indeed, the assertion is made in a brief, and not even by way of affidavit. Such a bald, unsupported assertion is insufficient to stand in the way of this court's ordering arbitration of Fowler's claims.

### 6. The Arbitrability of the Stock Option Agreement

Fowler argues that the stock option agreement under which he claims entitlement to stock options is clear and unambiguous. Thus, "there is nothing in dispute nor still to be decided further by an arbitrator." (Fowler's Br. ¶ 1.) In other words, Fowler seems to be arguing that his claim for relief stemming from his being denied his stock option rights is somehow not arbitrable.

■ A party objecting to having a particular dispute referred to arbitration "shoulders a heavy burden of proving to this court 'with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Envirex*, 832 F.Supp. at 1297 (citing *United Steelworkers of America v. Warrior and Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)). Fowler has not persuaded me that his claim for relief stemming from his being denied his stock option rights is not arbitrable.

Paragraph 1.1 of the EDRP clearly and unambiguously states that:

> [t]he parties agree to submit to this EDRP, any and all Disputes between the parties that arise from or relate to the Employee's employment with the Employer, and that concern legally protected rights for which a court or administrative tribunal, in the absence of this EDRP, would be authorized by law to grant relief.

(EDRP ¶ 1.1.)

Fowler's claims arise from or relate to his employment with Bally. And, assuming he has a right to vested stock options, a court could afford him full relief for having been denied his right to such stock options. Such being the case, so too could an arbitrator. Thus, Fowler's arguments in opposition to Bally's motion to dismiss and to compel arbitration must be rejected.

### 7. Request for Dismissal

■ Bally requests that the court dismiss the plaintiffs' actions against it. The Federal Arbitration Act states, in relevant part, "[i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending ... shall on application of one of the parties stay the trial of the action ...." 9 U.S.C. § 3. This language,

although it refers to a stay, was not meant to limit the discretion of the court to dismiss a case in the proper circumstances. *See Fedmet Corp. v, M/V Buyalyk*, 194 F.3d 674, 678 (5th Cir.1999).

■ In particular, "[i]f all of the issues raised before the district court are arbitrable, dismissal of the case is not inappropriate." *Id.; see also Bloxom v. Landmark Pub. Corp.*, 2002 WL 185551, *6 (E.D.Tex. Feb.5, 2002) (dismissing plaintiff's claims with prejudice, rather than staying the action, after determining that all claims raised in suit were subject to arbitration); *Milgrim v. Backroads, Inc.*, 2001 WL 468244, *5 (S.D.N.Y. May 1, 2001) ("[C]ourts have the discretion to dismiss—rather than stay—an action when all of the issues in it must be arbitrated."); *Emeronye v. CACI Intern., Inc.*, 141 F.Supp.2d 82, 88 (D.D.C.2001) (holding that a court is not precluded from dismissing a claim, rather than staying the action, after compelling arbitration in certain circumstances, including when all issues raised in the complaint must be submitted to arbitration). The Fifth Circuit further explained, "[g]iven our ruling that all issues raised in this action are arbitrable and must be submitted to arbitration, retaining jurisdiction and staying the action will serve no purpose. Any post-arbitration remedies sought by the parties will not entail renewed consideration and adjudication of the merits of the controversy but would be circumscribed to a judicial review of the arbitrator's award in the limited manner prescribed by law." *Fedmet Corp.*, 194 F.3d at 678 (quoting *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir.1992)).

Because the court finds that all of the issues raised in the plaintiffs' complaints are arbitrable, retaining jurisdiction and staying these actions will serve no purpose. Therefore, the court will exercise its

*d*iscretion and dismiss both actions without prejudice.[4]

## IV.  CONCLUSION

In conclusion, and for all of the foregoing reasons, Bally's motion to dismiss and compel arbitration will be granted.

**NOW THEREFORE IT IS OR-DERED** that the defendant's motion to dismiss and to compel arbitration be and hereby is **GRANTED**;

**IT IS FURTHER ORDERED** that these actions be and hereby are dismissed without prejudice and that the parties arbitrate the claims set forth in the plaintiffs' complaints pursuant to the provisions of the EDRP.

---

4. The prospect that arbitration of the issues raised in the plaintiffs' complaints may now be time-barred by the EDRP does not prevent the court from dismissing the complaints without prejudice. *See Fedmet Corp.*, 194 F.3d at 678.