**ELLEFSON PLUMBING CO. Plaintiff**

**v.**

**HOLMES & NARVER CONSTRUCTORS, INC. and RELIANCE INSURANCE CO. Defendants**

**No. 100CV149–D–D.**

United States District Court,
N.D. Mississippi,
Eastern Division.

Sept. 26, 2000.

J. Douglas Ford, Studdard Ray & Ford, Columbus, MS, for plaintiff.

Jeffrey A. Kennard, James M. Warden, Blackwell, Sanders, Peper, Martin, LLP, Overland Park, KS, for defendants.

## OPINION

DAVIDSON, District Judge.

Presently before the court is the Defendants' motion to dismiss or, in the alternative, motion to compel arbitration and stay proceedings. Upon due consideration, the court finds that the motion should be granted. In accordance with the parties' contract, the Plaintiff's claims shall be submitted to arbitration in Orange County, California, and this cause shall be dismissed without prejudice.

## A. Factual Background

The Defendant Holmes & Narver Constructors, Inc. (Holmes) is the prime contractor on a federal construction project involving the replacement of several family housing units at Columbus Air Force Base in Columbus, Mississippi (the Project). In early 1999, Holmes entered into a subcontract with the Plaintiff, Ellefson Plumbing Co. (Ellefson), whereby Ellefson became the subcontractor for some of the plumbing work required on the Project.

Ellefson then commenced doing some preliminary work required on the Project and, on July 22, 1999, and August 13, 1999, submitted invoices totaling $26,001.00 to Holmes for payment. Holmes did not pay Ellefson for the work. Later, on August 24, 1999, and August 26, 1999, Holmes and Ellefson entered into two separate "Temporary Agreements" that specified additional Project-related preliminary work that Holmes believed was necessary. Ellefson completed the work called for by the temporary agreements and, on September 7, 1999, submitted invoices totaling $8667.00 to Holmes for payment. Holmes did not pay Ellefson for the work.

On April 27, 2000, Ellefson filed the current suit contending that it is owed a total of $34,668.00 for the preliminary work it performed related to the Project. On June 2, 2000, Holmes filed a motion seeking to compel arbitration of Ellefson's claims according to the terms of the Subcontract between the parties, and to have these proceedings dismissed or stayed.

## B. Discussion

### 1. Validity of the Subcontract

Before the court can compel arbitration of Ellefson's claims according to the terms

of the Subcontract, the Subcontract itself must be valid and enforceable. Relying upon Attachment A to the Subcontract,[1] Ellefson contends that it merely conditionally signed the Subcontract and conditioned its acceptance and signature upon Holmes obtaining Air Force approval of certain proposed design changes to the plumbing structure. Thus, goes Ellefson's argument, because the Air Force eventually declined to approve the proposed design changes, the Subcontract was never formed and is therefore unenforceable.

■ Ellefson's argument, however, overstates the significance of Attachment A. A cursory review of Attachment A reveals that it merely conditioned the value or price of the Subcontract—not Ellefson's execution of the Subcontract—on the Air Force accepting the proposed design changes to the plumbing structure. As such, the court holds that, although Attachment A was intended to allow Ellefson to change its price if the Air Force rejected the proposed design changes, it was not intended to invalidate the Subcontract or otherwise cause any of the additional terms of the Subcontract (such as the arbitration clause) to become unenforceable. The court holds, therefore, that the Subcontract is valid, enforceable and binding on the parties.

### 2. The Temporary Agreements

Ellefson's next argument against its claims being arbitrable revolve around the fact that, after the Subcontract was entered into, Ellefson and Holmes entered into two Temporary Agreements that called for Ellefson to perform work not specifically called for by the Subcontract.

---

**1.** Attachment A to the Subcontract provides that "The value of the contract is correct providing the Air Force accepts the submittals and design submitted. Any change in materials or design could result in a change in the value of the contract price." Both parties signed the Attachment.

Ellefson argues that the present dispute is not governed by the Subcontract's mandatory arbitration clause because its claims supposedly arise from Holmes' alleged breach of these Temporary Agreements, as opposed to arising from Holmes' breach of the Subcontract itself.

It is undoubtedly clear that all of the preliminary work Ellefson performed prior to the enactment of the Temporary Agreements was performed pursuant to the original Subcontract, because there was no other agreement in place at the time for the parties to perform under. Ellefson argues, however, that the work it performed pursuant to the Temporary Agreements is not covered by the Subcontract and is thus not subject to the Subcontract's mandatory arbitration clause.

■ While it is undisputed that the Temporary Agreements expanded the scope of Ellefson's work on the Project, the court declines to find that these Agreements constituted entirely new and separate subcontracts. The barebones nature of the Agreements, compared to the original Subcontract, and the Agreements' lack of material terms commonly found in construction subcontracts, lead the court to hold that the Temporary Agreements related to and were a part of the underlying Subcontract, and were not entire new subcontracts in and of themselves. As such, the court finds that all of Ellefson's work that is part of this claim was performed pursuant to the parties' original Subcontract.

3. The Subcontract's Arbitration Clause

■ The Federal Arbitration Act, 9 U.S.C. §§ 1—16 (1999), provides that, in a contract evidencing a transaction involving commerce, a written provision to settle by arbitration a controversy arising out of such contract is valid, irrevocable, and enforceable. 9 U.S.C. § 2 (1999). The Fed-

eral Arbitration Act expresses a strong national policy in favor of arbitration. *Southland Corp. v. Keating,* 465 U.S. 1, 10, 104 S.Ct. 852, 857, 79 L.Ed.2d 1 (1983). As such, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Mouton v. Metropolitan Life Ins. Co.,* 147 F.3d 453, 456 (5th Cir.1998).

■ The Fifth Circuit has directed that courts are to perform a two-step inquiry to determine whether parties should be compelled to arbitrate a dispute. *R.M. Perez & Assocs., Inc. v. Welch,* 960 F.2d 534, 538 (5th Cir.1992). First, the court must determine whether the parties agreed to arbitrate the dispute. Once the court finds that the parties agreed to arbitrate, it must consider whether any federal statute or policy renders the claims nonarbitrable. *R.M. Perez,* 960 F.2d at 538. A party seeking to avoid arbitration must allege and prove that the arbitration clause itself was a product of fraud, coercion, or another ground allowing contract revocation that exists at law or in equity. *Reisfeld & Son Import Co. v. S.A. Eteco,* 530 F.2d 679, 680–81 (5th Cir.1976).

The parties are in agreement that their initial Subcontract, pursuant to which Ellefson performed the work at issue, contains the following mandatory arbitration and forum-selection clauses:

All claims and disputes between CONTRACTOR and SUBCONTRACTOR not originating with acts or omissions of CONTRACTOR'S prime contract customer and not settled by mutual agreement shall be decided by arbitration conducted in accordance with California Code of Civil Procedure Title 9 (excluding Section 1283.05). The arbitration proceedings shall be conducted in Orange County, California by a single arbitrator agreed upon by the parties or

appointed pursuant to California Code of Civil Procedure Section 1281.6. The agreement to arbitrate shall be specifically enforceable under prevailing arbitration law.

Contract—General Terms and Conditions, ¶ 20(d), p. E–8.

As for the first step in the court's analysis, the court finds both that the work at issue was performed pursuant to the parties' initial Subcontract and that the parties agreed to arbitrate this dispute. The arbitration clause is unambiguous, sufficiently broad to cover the current dispute, and susceptible to only one interpretation—that the parties intended to settle their disputes, *all* of their disputes, through arbitration. Holmes alleged breach of contract, therefore, does not fall outside the scope of the arbitration clause.

As for the second step in the court's analysis, Ellefson asserts that, because one of its claims arise under the Miller Act, 40 U.S.C. §§ 270a—270f (1986 and Supp. 2000), and because the contract did not specifically waive Ellefson's Miller Act remedy (instead using the term "all claims and disputes"), its claims are rendered nonarbitrable and the court should deny Holmes' motion to compel arbitration.

■ It is well-established, however, that statutory claims, such as those arising under the Miller Act, may be the subject of an enforceable arbitration agreement. *See Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987) (court's duty to "rigorously enforce arbitration agreements . . . is not diminished when a party bound by an agreement raises a claim founded on statutory rights."); *United States ex rel. Portland Constr. Co. v. Weiss Pollution Control Corp.*, 532 F.2d 1009, 1011 (5th Cir.1976) (noting that "the Miller Act does not prohibit arbitration before resort to the courts if the subcon-

tractor and contractor had previously agreed to arbitrate disputes."). As such, Ellefson's argument that its Miller Act claim is not arbitrable under the Federal Arbitration Act is without merit and the court finds that Ellefson's claims, including its Miller Act claim, are covered by the arbitration clause contained in the Subcontract and that all of Ellefson's claims are arbitrable. All of Ellefson's claims, therefore, shall be submitted to arbitration in accordance with the terms of the parties' Subcontract.

### 4. The Forum Selection Clause

■ Ellefson also argues that, even if its claims are arbitrable, the court should disregard the Subcontract's agreed-upon forum selection clause and should order that the arbitration take place in Mississippi instead of Orange County, California. It is well-established in the Fifth Circuit, however, that district courts in Mississippi are empowered to compel arbitration outside this district. *See Dupuy–Busching Gen. Agency, Inc. v. Ambassador Ins. Co.*, 524 F.2d 1275, 1278 (5th Cir.1975) (holding that Mississippi district court properly ordered parties to arbitrate in New Jersey in accordance with the terms of their contract); *National Iranian Oil Co. v. Ashland Oil, Inc.*, 817 F.2d 326, 331 (5th Cir. 1987) (recognizing that *Dupuy–Busching* empowers district courts to compel arbitration outside district where court sits); *Municipal Energy Agency of Mississippi v. Big Rivers Elec. Corp.*, 804 F.2d 338, 344–45 (5th Cir.1986) (same).

Here, the parties agreed to submit all their claims and disputes to arbitration in Orange County, California. Ellefson has not argued that this forum-selection clause is ambiguous nor that any fraud or coercion took place surrounding the signing of the contract. As such, the court finds that the forum-selection clause is valid and en-

forceable and that the parties are to submit this case to arbitration in Orange County, California.

### 5. Dismissal of Ellefson's Claims

■ Finally, the court finds that this cause should be dismissed without prejudice. Section 3 of the Federal Arbitration Act provides that, upon a showing that the issues involved in an action are properly referable to arbitration, the court "shall ... stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3 (1999). The Fifth Circuit has ruled, however, that this Section was not intended to limit dismissal of a case in the proper circumstances and that if all of the issues raised in the district court are arbitrable, dismissal of the case is proper. *See Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir.1992) (holding that retaining jurisdiction and staying an action "serve[s] no purpose" when all issues are arbitrable); *Fedmet Corp. v. M/V Buyalyk*, 194 F.3d 674, 678 (5th Cir.1999) (same). As was the case in *Alford*, all of the claims in this case are arbitrable. As such, Ellefson's claims shall be dismissed without prejudice.

A separate order in accordance with this opinion shall issue this day.

### ORDER

Pursuant to an opinion issued this day, it is hereby ORDERED that

(1) the Defendants' motion to dismiss or, in the alternative, to compel arbitration of the Plaintiff's claims and stay these proceedings (docket entry 7) is GRANTED;

(2) the parties shall submit this case, in accordance with their contract, to arbitration in Orange County, California; and

(3) this case is DISMISSED WITHOUT PREJUDICE.