**William L. PRIDE, Jr. Plaintiff**

v.

**FORD MOTOR COMPANY;
et al. Defendants**

**No. 2:04 CV 116–D–A.**

United States District Court,
N.D. Mississippi, Delta Division.

Sept. 28, 2004.

Drayton Durell Berkley, Cochran Cherry Givens Smith & Bolton LLP, Memphis, TN, Richard Burton, Miami, FL, Kendall Coffey, Lisa Hogan, Coffey & Wright LLP, Miami, FL, for Plaintiff.

Thomas W. Curvin, Dara L. Steele-Belkin, Sutherland, Asbill & Brennan, LLP, Atlanta, GA, John Samuel Hill, Mitchell, McNutt & Sams, Tupelo, MS, for Defendants.

## OPINION GRANTING MOTION TO COMPEL ARBITRATION

DAVIDSON, Chief Judge.

Presently before the court is the Defendants' motion to compel arbitration of the Plaintiff's claims. Upon due consideration, the court finds that the motion should be granted. In accordance with the parties' agreement, the Plaintiff's claims shall be submitted to arbitration, and this cause shall be dismissed without prejudice.

### A. Factual Background

The Plaintiff owned and operated a Ford/Lincoln/Mercury automobile dealership in Clarksdale, Mississippi, from mid–1996 until December of 2000. In December of 2000, through the Defendant Ford Motor Company's (Ford's) "Dealer Development Program," Ford recapitalized the dealership and the Plaintiff became the dealership's President and General Manager. In connection with that transaction, the parties signed a document entitled "Stock Redemption Plan/Dealer Develop-

ment Agreement" (the Agreement) that contains a mandatory binding arbitration clause. Several years later, on March 3, 2004, the Plaintiff was terminated as the dealership's President and General Manager.

Despite the Agreement's arbitration clause, the Plaintiff commenced this lawsuit on April 26, 2004, in which he challenges the entire Dealer Development transaction as well as the termination of his relationship with the dealership; he asserts causes of action for, *inter alia,* breach of fiduciary duty, fraud, wrongful termination, and breach of contract. Thereafter, the Defendants filed the present motion seeking an order compelling arbitration of the Plaintiff's claims pursuant to their Agreement.

### B. Discussion

#### 1. The Arbitration Agreement

■ The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1—16, provides that a written arbitration provision contained in a contract involving commerce is valid, irrevocable, and enforceable. 9 U.S.C. § 2. The FAA expresses a strong national policy in favor of arbitration, and any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Southland Corp. v. Keating,* 465 U.S. 1, 10, 104 S.Ct. 852, 857, 79 L.Ed.2d 1 (1984); *Mouton v. Metropolitan Life Ins. Co.,* 147 F.3d 453, 456 (5th Cir.1998).

■ The Fifth Circuit has directed that courts are to perform a two-step inquiry to determine whether parties should be compelled to arbitrate a dispute. *OPE Int'l LP v. Chet Morrison Contractors, Inc.,* 258 F.3d 443, 445 (5th Cir.2001). First, the court must determine whether the parties agreed to arbitrate the dispute. *OPE Int'l,* 258 F.3d at 445. In conducting this inquiry, the court must determine whether a valid agreement to arbitrate exists, and whether the dispute in question

falls within the scope of that arbitration agreement. *Id.; Pennzoil Exploration and Prod. Co. v. Ramco Energy Ltd.,* 139 F.3d 1061, 1065 (5th Cir.1998). Once the court finds that the parties agreed to arbitrate the claims, it must consider whether any federal statute or policy renders the claims nonarbitrable. *OPE Int'l,* 258 F.3d at 446.

The parties do not dispute that their Agreement contains the following mandatory arbitration clause in Article 10, entitled "Resolution of Disputes:"

> If a dispute arises between Operator and Ford arising out of or relating to this Agreement, the following procedures shall be implemented in lieu of any other judicial or administrative process: . . . the dispute shall be finally settled by arbitration in accordance with the rules of the CPR Institute for Dispute Resolution for Non–Administered Arbitration for Business Disputes . . . Arbitration shall be the sole and exclusive remedy between the parties with respect to any dispute, protest, controversy or claim arising out of or relating to this Agreement. . . . Any arbitration decision or award shall be final and binding on all parties . . .

*See* Agreement at 21–22.

As for the first step in the court's analysis, the Plaintiff asserts that the arbitration clause is unenforceable because: (i) 15 U.S.C. § 1226 prohibits this dispute from being arbitrated; and (ii) the Agreement is unconscionable and was procured by fraud.

For the following reasons, the court finds that the Plaintiff's arguments are misplaced.

#### 2. Non–Signatory Status

As an initial matter, the court notes that several of the Defendants are non-signatories to the Agreement. In addition to the fact that the Agreement specifically states

that "*any* dispute, protest, controversy or claim arising out of or relating to [the] Agreement" must be submitted to arbitration, the Fifth Circuit has made clear that a non-signatory to a contract containing an arbitration provision may compel arbitration against a signatory, when that signatory "raises allegations of substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract." *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 527 (5th Cir.2000).

■ Here, the non-Ford Defendants assert that although they are non-signatories to the Arbitration Agreement between the Plaintiff and Ford, they are nevertheless entitled to compel arbitration of the Plaintiff's claims because those claims are intertwined with the Plaintiff's claims against Ford. The court agrees.

All of the non-Ford Defendants are either wholly owned subsidiaries of Ford or are individuals who are employed by Ford. The claims asserted by the Plaintiff against the non-Ford Defendants are clearly intertwined with the claims against Ford. Specifically, the complaint charges, *inter alia,* that these Defendants "have acted at all times for the sole purpose of protecting FORD's best interests and its relationships with third parties at the expense and to the detriment of the [Plaintiff]" and that the Defendants have "an intimate business relationship." *See* Complaint at 20, 24. Further, it is undisputed that the Plaintiff's claims against Ford arise from the same transaction or series of transactions and involve the same participants and representations as do the Plaintiff's claims against the non-Ford Defendants. As such, the court finds that the Plaintiff's claims raise allegations of substantially interdependent and concerted misconduct by both the non-signatory Defendants and the signatory Defendant Ford. The Defendants, therefore, may compel arbitration of the claims against them in accordance with the Agreement, pursuant to the Fifth Circuit's ruling in *Grigson.*

### 3.  15 U.S.C. § 1226

■ The Plaintiff claims that 15 U.S.C. § 1226(a)(2) bars the Defendants from requiring that the parties' dispute be submitted to arbitration. Section 1226(a)(2) bars a party to a "motor vehicle franchise contract" from enforcing an arbitration clause in a contract unless all parties consent to arbitration. The statute defines a motor vehicle franchise contract as "a contract under which a motor vehicle manufacturer, importer, or distributor sells motor vehicles to any other person for resale to an ultimate purchaser and authorizes such other person to repair and service the manufacturer's motor vehicles." 15 U.S.C. § 1226(a)(1)(B).

The court finds, however, that Section 1226 does not apply here because the parties' Agreement is not a "motor vehicle franchise contract." The Agreement at issue here is not a contract under which Ford sold motor vehicles to the Plaintiff for resale, nor did the Agreement authorize the Plaintiff to repair or service Ford's motor vehicles. Rather, the Agreement provided for the Plaintiff to be employed by an automobile dealership corporation (Clarksdale Ford Lincoln Mercury, Inc.), as well as providing a mechanism for the Plaintiff to invest in the dealership corporation. Thus, the court finds that Section 1226 does not apply and does not bar the Defendants from requiring that this dispute be arbitrated.

### 4.  Fraudulent Misrepresentation

■ The Plaintiff next asserts that the Dealer Development Agreement as a whole, as opposed to the specific arbitration provision within the Agreement itself, was procured by fraud and is unconsciona-

ble. Under *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 403–04, 87 S.Ct. 1801, 1805–06, 18 L.Ed.2d 1270 (1967), however, a claim of fraud or unconscionability directed to the making of a contract as a whole does not affect the enforcement of an arbitration agreement contained in the contract. Such fraud claims are for the arbitrator—not the court—to decide, and claims of this nature are properly sent to arbitration in accordance with the parties' arbitration agreement. *See Primerica Life Ins. Co. v. Brown,* 304 F.3d 469, 472 (5th Cir.2002) (holding that "unless a defense relates specifically to the arbitration agreement, it must be submitted to the arbitrator as part of the underlying dispute."); *R.M. Perez & Assocs., Inc. v. Welch,* 960 F.2d 534, 538 (5th Cir.1992) ("Only if the allegation of fraud goes specifically to the making of the agreement to arbitrate must a district court address the merits of the fraud claim. The district court does not address claims of fraud in the inducement of the contract generally."). Here, because the Plaintiff's claims of fraud relate to the formation of the Agreement as a whole and not specifically to the making of the arbitration provision, the court finds that, in accordance with the above-cited authorities, the Plaintiff's claims of fraud should be decided by an arbitrator and not by this court.

### 5. Unconscionability

■ Finally, the Plaintiff contends that the Agreement is unenforceable on grounds of unconscionability. In determining whether an agreement to arbitrate is unenforceable due to unconscionability, the court refers to state law. *Doctor's Assocs., Inc. v. Casarotto,* 517 U.S. 681, 686–87, 116 S.Ct. 1652, 1656, 134 L.Ed.2d 902 (1996).

■ Under Mississippi law, a court may refuse to enforce a contract, or any clause of a contract, that is found to have been unconscionable when made. *See* Miss.Code Ann. § 75–2–302 (1972). Mississippi law defines an unconscionable contract as "one such as no man in his senses and not under a delusion would make on the one hand, and no honest and fair man would accept on the other." *Entergy Mississippi, Inc. v. Burdette Gin Co.,* 726 So.2d 1202, 1207 (Miss.1998). Under Mississippi law, there are two types of unconscionability: procedural and substantive. *York v. Georgia–Pacific Corp.,* 585 F.Supp. 1265, 1278 (N.D.Miss.1984). A party may establish procedural unconscionability if he proves "a lack of knowledge, lack of voluntariness, inconspicuous print, the use of complex legalistic language, disparity in sophistication or bargaining power of the parties and/or a lack of opportunity to study the contract and inquire about the contract terms." *York,* 585 F.Supp. at 1278. A party may prove substantive unconscionability if he proves that the terms of the arbitration clause were oppressive. *Id.*

■ Here, while the Plaintiff alleges, in general and conclusory terms, that the parties' Agreement is procedurally and substantively unconscionable, no evidence is presently before the court that supports that conclusion. The Plaintiff does not assert a lack of ability to read or understand the Agreement or that any behavior on the part of the Defendants prevented a careful reading of the Agreement. *See Hicks v. Bridges,* 580 So.2d 743, 746 (Miss. 1991); *Busching v. Griffin,* 542 So.2d 860, 865 (Miss.1989) ("To permit a party when sued on a written contract, to admit that he signed it but to deny that it expresses the agreement he made or to allow him to admit that he signed it but did not read it or know its stipulations would absolutely destroy the value of all contracts."). In fact, the Agreement itself contains a provi-

sion that states "Operator has been advised to consult Operator's own legal and tax counsel" concerning the Agreement's provisions. *See* Agreement at 2. Thus, it is clear that this was an arms-length business transaction where both parties were aware that legal counsel should be consulted.

In any event, the Agreement's arbitration provision was a separate section within the Agreement, with the words "**ARTICLE 10. RESOLUTION OF DISPUTES**" placed at the top of the section in bold, capitalized letters that are easy to see. Further, as noted above, the Agreement clearly states that all disputes between the parties are to be submitted to binding arbitration. This language, combined with the Plaintiff's lack of evidence as to unconscionability, leads the court to find that the Plaintiff has failed to establish that the parties' Agreement is unenforceable on grounds of procedural or substantive unconscionability.

### 6. Conclusion

Thus, the court finds that the parties agreed to arbitrate the Plaintiff's claims; therefore, the first step in the court's analysis is complete. The Agreement's arbitration clause is unambiguous, sufficiently broad to cover the Plaintiff's claims, and susceptible to only one interpretation— that the parties intended to settle, through arbitration, the claims the Plaintiff has raised. None of the Plaintiff's claims fall outside the scope of the arbitration clause.

As for the second step in the court's analysis, the Plaintiff does not argue that the claims are nonarbitrable for any reasons other than those previously addressed, and the court finds that no federal statute or policy renders the Plaintiff's claims nonarbitrable. As such, the court finds that the Plaintiff's claims should be submitted to arbitration in accordance with the terms of the parties' Agreement.

### C. Dismissal of the Plaintiff's Claims

Finally, the court finds that this cause should be dismissed without prejudice. Section 3 of the Federal Arbitration Act provides that, upon a showing that the issues involved in an action are properly referable to arbitration, the court "shall ... stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. The Fifth Circuit has ruled, however, that Section 3 of the FAA does not limit dismissal of a case in the proper circumstances and that if all of the issues raised in the district court are arbitrable, dismissal of the case is proper. *See Alford v. Dean Witter Reynolds, Inc.,* 975 F.2d 1161, 1164 (5th Cir.1992) (holding that retaining jurisdiction and staying an action "serve[s] no purpose" when all issues are arbitrable); *Fedmet Corp. v. M/V Buyalyk,* 194 F.3d 674, 678 (5th Cir.1999).

As was the case in *Alford,* all of the claims in this case are arbitrable. As such, the Plaintiff's claims shall be dismissed without prejudice.

A separate order in accordance with this opinion shall issue this day.

### ORDER GRANTING MOTION TO COMPEL ARBITRATION

Pursuant to an opinion issued this day, it is hereby ORDERED that

(1) the Defendants' motion to compel arbitration (docket entry 34) is GRANTED;

(2) the Plaintiff's claims shall be submitted to arbitration, in accordance with the parties' Agreement; and

(3) this case is CLOSED.

SO ORDERED.